[Civ. No. 486.   Third Appellate District.—August 15, 1908.]

VANCE REDWOOD LUMBER COMPANY and EUREKA AND KLAMATH RIVER RAILROAD COMPANY, Respondents, v. B. F. DURPHY et al., Defendants, FIELDBROOK COMPANY, Appellant.

VENDOR AND PURCHASER—FORECLOSURE OF CONTRACT FOR SALE AND PURCHASE—CONCLUSIVENESS OF FINDINGS UPON APPEAL.—In an action by vendors to foreclose a contract for the purchase and sale of land for nonpayment of purchase money, where the findings were for the plaintiffs upon all of the issues raised by the defendants, and no evidence is brought up upon appeal, the findings as made are conclusive of the rights of the parties.

ID.—CONSTRUCTION OF CONTRACT—INTEREST AND TAXES—CONSIDERATION OF PURCHASE.—A provision in the contract of sale that the purchaser shall, besides the interest, pay taxes, is to be construed as meaning only taxes on the land, and not double taxation on the land and purchase price; and such provision, like that for payment of the principal, constitutes part of the consideration for the purchase of the land.

ID.—CONSTRUCTION OF CONSTITUTION—FORFEITURE OF INTEREST.—Section 5 of article XIII of the constitution, providing for the forfeiture of interest, where "a debtor is obligated to pay any tax or assessment on money loaned or on any mortgage, deed of trust, or other lien," has no application to a contract by a purchaser under a contract of sale to pay taxes on the land; nor does it refer to a possible equitable lien of the purchaser for purchase money paid, which could arise, if at all, only where the vendor is in default.

ID.—LIENS NOT IMPLIED.—The law implies no lien from a mere contract to pay the purchase money; and where the vendor has title, he has it without any occasion for a lien.

ID.—JUDGMENT LIMITING EQUITABLE RIGHT OF PURCHASER—AMOUNT OF INTEREST REQUIRED TO BE PAID.—*Held,* that the amount of in-

terest fixed by the judgment in the action to foreclose the equitable rights of the purchaser required to be paid, besides the principal, within a limited time, in order to preserve such equitable rights, was justified by the pleadings, as well as by a proper construction of the contract, and also by presumed evidence, not returned upon appeal, removing any possible uncertainty in the language respecting interest.

APPEAL from a judgment of the Superior Court of Humboldt County.   E. W. Wilson, Judge.

The facts are stated in the opinion of the court.

A. R. Thorpe, J. H. G. Weaver, and Coonan & Kehoe, for Appellant.

T. H. Selvage, and C. M. Wheeler, for Respondents.

CHIPMAN, P. J.—This is an action to foreclose a contract for the sale and purchase of land.   Plaintiffs had judgment, from which defendant Fieldbrook Company appeals on the judgment-roll.

The points to be decided will be fully understood from a consideration of the contract involved and the findings and decree of the court.   The essential points of the contract are as follows:

"THIS AGREEMENT, entered into this 19th day of October, 1901, between the Vance Redwood Lumber Company, and the Eureka and Klamath River Railroad Company, corporations, the party of the first part, and B. F. Durphy, of Eureka, Humboldt County, California, the party of the second part: WITNESSETH: . . .

"FIRST: Said parties do hereby agree to sell unto said second party, his heirs and assigns, and said second party hereby agrees to buy from said first parties at the rate of thirty dollars ($30.00) per acre payable as hereinafter set forth, the following described tracts of land, in Humboldt County, California, to wit: [Land described.   The grantors make certain reservations not material to the issues] . . .

"SECOND: Said second party, his heirs or assigns, shall be and is hereby permitted to lay out and plat, at his own cost and expense. into lots fifty (50) by one hundred (100) feet, and thirty-three and one-third by one hundred feet, blocks

two hundred (200) feet square, streets fifty (50) feet wide, portions of the aforesaid described premises and record such portion to the extent of forty (40) acres; and the manager of said first party, the Vance Redwood Lumber Company, hereby agrees to record said plat of forty (40) acres and to convey same to said second party his heirs or assigns upon payment to said first party of the sum of thirty dollars ($30.00) per acre for each parcel so conveyed, each parcel to be not less than five (5) acres at any one time or in any one conveyance until the full forty (40) acres have been paid for, at which time deed will be made to said second party, his heirs or assigns, for the balance of said forty acres.

"Third: Said second party, his heirs or assigns, may sell the whole or any portion of the aforesaid recorded tract of forty (40) acres to any person or persons, but the said second party shall pay said first parties, their successors or assigns, for the tract so sold a sum of money to be computed at the rate of thirty dollars ($30.00) per acre, before said first parties shall be required to make deed, it is understood that said first parties shall not be required to make conveyance for less than five (5) acres at a time. In computing the acreage of the platted land so to be conveyed by said first party to said second party, due consideration shall be given to the acreage occupied by streets and alleys, and for this acreage occupied by streets and alleys said second party shall pay said first parties at the rate of thirty dollars ($30.00) per acre.

"Fourth: Should said second party desire to record any part of said tract of land in excess of forty acres so platted, said second party, his heirs or assigns, may do so, but before so doing, said second party, his heirs or assigns, shall pay to the said first parties, their successors and assigns, a sum of money to be computed at the sum of thirty dollars ($30.00) per acre for each additional acre in excess of said eighty acres so desired to be recorded.

"Fifth: Said second party, his heirs or assigns, shall pay said first parties on or before June 1st, 1902, the sum of six hundred dollars ($600.00) and on or before the 2nd day of January, 1903, a like sum of six hundred dollars ($600.00) with interest upon deferred payments thereupon at the rate of six per cent (6%) per annum from January 1st, 1902, and

on or before the second day of January, of each succeeding year, the sum of $1200.00 with interest thereupon at the rate of six per cent (6%) per annum from January 1st, 1902, until the full amount constituting the selling price of said tract of land hereinabove described shall have been paid to said parties of the first part; said second party shall also pay taxes."

[The following is written on the margin of the contract at this point: "It is understood that the money paid for platted lands shall not apply on the annual payments. The sum of $1200 per annum is to be paid over & above amt's. paid for platted lands. (Signed) A. B. Hammond."]

"This agreement shall be binding upon the successors and assigns and upon the heirs and assigns of the parties hereto for a period of four years from and after the date hereof, unless earlier terminated for failure as particularly set forth herein."

"IN WITNESS WHEREOF, the said parties hereto have hereunto set their names and seals, the day and year hereinabove set forth.

  "VANCE REDWOOD LUMBER COMPANY,
    "Per A. B. HAMMOND,
      "President.

"Attest

    "WM. G. GOSSLIN,
    Secretary of Vance Redwood Lumber Company,
  "EUREKA & KLAMATH RIVER RAILROAD COMPANY,
      "A. B. HAMMOND, President,
       "Parties of the first part.
       "B. F. DURPHY,
       "Party of the second part."

In January, 1902, certain four tracts of five acres each were sold to one Belcher, and in May, 1902, Durphy assigned these Belcher contracts to defendant Fieldbrook Company and also the Durphy contract with plaintiffs of October 19, 1901. Subsequently defendant Fieldbrook Company contracted to sell to one Boulster a seven-acre tract for the sum of $275; also lots 7 and 8, block 35, to one Voght for the sum of $565, which was later, by agreement, reduced to $250.

Among other things, defendants set up in their answer that the marginal clause of the contract signed by A. B. Hammond (inserted at the end of paragraph fifth) was not intended to become a part of the contract, and that Durphy never assented to it but expressly repudiated it; also, that the concluding paragraph of said contract was incorporated in the agreement by mutual mistake, and "was not intended to change the length of time that said Durphy and assigns were to have in which to pay for said land," but that it was the intention to still give said B. F. Durphy and assigns ten years within which to pay for said land. These were the important contentions of defendants, but the court and the jury, called to determine the facts as to them, found against defendants on both issues, and the findings are conclusive as the evidence is not brought up. Among other issues found by the jury and adopted by the court were the following: That defendants did not pay to plaintiffs the sum of $600 falling due under the terms of the contract June 1, 1902; nor the sum of $600 and interest falling due January 2, 1903; nor did defendants pay to plaintiffs the sum of $1200 and interest falling due January 2, 1904. It was also found by the jury and the court that plaintiffs had fully performed all the acts and things by them agreed to be performed. The court further found: That of the lands agreed in said contract of October 19, 1901, to be sold by plaintiffs to defendant Durphy, said defendant has paid to plaintiffs the sum of $600 for twenty acres of said land sold to said Belcher, and by reason thereof plaintiff, Vance Redwood Lumber Company, has made to said Belcher deeds therefor; that defendants have not performed any of the terms of said contract of October 19, 1901, nor have they paid to plaintiffs any money on account of said contract, except said sum of $600 for the twenty acres of land sold to said Belcher; that defendants have made contracts with numerous persons agreeing to sell to such persons certain portions of said land, other than said twenty acres sold to said Belcher, and have received large sums of money upon said contracts, without procuring to be vested in said persons the legal title to said portions of said lands so contracted to be sold. The findings then set forth the contracts with Boulster and Voght heretofore referred to. It is further found that plaintiffs, at the instance of defendant Durphy and under his direction,

platted a forty-acre tract of said land, known as survey 83, dividing it into lots and blocks and streets, which became a part of the town known as Fieldbrook, and also likewise platted another tract of said land, known as survey 84, which also became a part of said town, both of which surveys were duly recorded.   It is also found, further, that by their "acts and conduct defendants misled and deceived plaintiffs in relation to carrying out said contract, and induced them to act to their prejudice in a manner other than, and different from, the manner in which they would have acted had they not been so misled and deceived."   It is also found that on April 15, 1905, the said Voght made demand upon plaintiff, Vance Lumber Company, that it execute to him a conveyance of said lands described in his said contract; that thereafter, on said day, said plaintiff delivered to him a quit-claim deed for the land in his said contract described, receiving as consideration therefor the sum of $100, and that said conveyance was made with defendants' consent; that in the event that defendants carry out the terms of their said contract of October 19, 1901, and make the payments therein called for on their part, within ninety days from the date hereof, the said $100 "will constitute a credit to be allowed defendants upon the amount now remaining unpaid by defendants in the carrying out and complying with the payments called for upon their part to be made, under said contract of October 19, 1901; the amount of said payments being hereafter more particularly set forth."   As conclusion of law the court found that the contract of October 19, 1901, as set out in plaintiffs' second amended complaint, was duly made and executed between plaintiffs and said defendant Durphy at the time and in the manner alleged in said complaint, and that the same was assigned by defendant Durphy May 7, 1902, to defendant Fieldbrook Company, and said company is now the owner thereof.

The court adjudged by its decree as follows: That "defendant Fieldbrook Company may have ninety days from the date hereof (July 14, 1906) within which time, to make to plaintiffs, the payments called for by said contract of October 19, 1901, as modified by the allowance of the said credits hereinbefore allowed by reason of the amounts received by plaintiffs from the sale of the said parcels of land to the said J. A. Boulster and John Voght"; particularly specified as follows:  .

"Said defendant, Fieldbrook Company, shall pay to plaintiffs within ninety days from date hereof $10,200.00 with interest thereon at the rate of six per cent per annum from January 2, 1902; deducting therefrom the sum of $275.00, together with interest thereon at the rate of seven per cent per annum from August 25, 1904, and deducting also the sum of $100.00 with interest thereon at the rate of 7 per cent per annum from the 15th day of April, 1905; said amounts of $275.00 and $100.00, so to be deducted with interest, being the amounts heretofore received by plaintiffs from the said Boulster and the said Voght. All of said amounts of interest to be computed up to the day upon which payment is made." Upon payment as above being made it is decreed that plaintiffs convey to defendant Fieldbrook Company all of said land except that described in the contracts of Belcher, Boulster and Voght. It is further decreed that, should defendant Fieldbrook Company fail to make said payments as directed by the decree, the defendants and each of them "be barred and forever foreclosed of all claims, rights, demands and equities of, in and to said contract of October 19, 1901, and of, in and to the lands therein specified and set forth, other than the said lands so sold to" said Belcher, Boulster and Voght, and upon such failure of defendant Fieldbrook Company said contract of October 19, 1901, is declared annulled and of no effect.

Appellants contend that the judgment is not supported by the findings in the following two particulars: 1. That the contract in question constituted a lien by which plaintiffs obligated defendants to pay the taxes, and hence plaintiffs, under section 5, article XIII of the constitution, were not entitled to any interest; 2. But if entitled to interest, they were not entitled to interest as found on $10,200.

Appellants discuss the first point at considerable length, but in our view it is without merit. This provision of the constitution is as follows: "Every contract hereafter made, by which a debtor is obligated to pay any tax or assessment on money loaned, or on any mortgage, deed of trust, or other lien, shall, as to any interest specified therein, and as to such tax or assessment, be null and void." We do not think this provision applies to the contract here, for it does not attempt to require the second party to pay taxes "on money, or any

mortgage, deed of trust, or other lien." If the clause of the contract reading, "said second party shall also pay taxes," means anything, it is that second party shall pay taxes on the land contracted to be sold. *Odd Fellows' Sav. Bank* v. *Brander*, 124 Cal. 255, [56 Pac. 1109], was just such a case as this where the remedy here sought was enforced. The contract there provided that the vendee should pay the taxes. The precise question now raised was not decided, but it is not likely that it would have been overlooked had it been thought to possess merit. Mr. Jones says: "Lien by contract exists only when it is expressly agreed that a party may retain the property as security for work done or expense incurred in support of it. There must be something more than a contract for the payment of the purchase price. The law implies no lien from such a contract." (1 Jones on Liens, p. 4.) Again: "In the one case (where title passes) the vendor has a lien without any title, and in the other (where title does not pass) he has the title without any occasion for a lien." (2 Jones on Liens, p. 57.) In the present case it seems to us that the provisions for payment of interest and taxes, like the payments of the principal, constitute part of the consideration for the purchase. And it is not reasonable to suppose that the parties to the contract had in mind that an attempt would be made to levy a tax upon the purchase price of the land, for to tax both land and contract would be double taxation. It is not necessary to consider the vendee's equitable lien to secure the purchase price paid, if he had any, for, first, the constitution does not refer to such a lien; and second, the vendor was not in default, in which case alone the vendee's lien arises. (3 Pomeroy's Equity Jurisprudence, sec. 1263.)

Appellant cites: *Avery* v. *Clark*, 87 Cal. 619, [22 Am. St. Rep. 272, 25 Pac. 919]; *Gessner* v. *Palmateer*, 89 Cal. 89, [24 Pac. 608, 26 Pac. 789], and *Kent* v. *Williams*, 114 Cal. 537, [46 Pac. 462], as supporting their view. We do not so regard them.

The findings that plaintiffs are entitled to interest under the contract are clearly justified, and the only remaining question is, Did the court correctly impose it? Appellant's contention is that the contract did not authorize interest on $10,200 from January 2, 1902. The entire purchase price for

the three hundred and sixty acres was $10,800, being $30 per acre. The court found that defendants had paid $600, and no more, which left $10,200 still due. Provision is made for allowing appellant principal and interest of the contracts of sale to Belcher, Boulster and Voght, so that these items may be laid out of consideration. The terms of the contract in regard to interest are not free from doubt and uncertainty.

Plaintiffs alleged in their complaint that under the contract defendant Durphy agreed to pay interest at the rate of six per cent upon deferred payments "until the full amount constituting the selling price of said tract of three hundred and sixty acres of land hereinabove described, shall have been paid to said parties of the first part." There is no denial of this construction put upon the contract by plaintiffs. In their answer the principal issues raised upon the meaning of the contract related to the so-called marginal note, above pointed out, and to the clause limiting the time of final payments to four years, defendants claiming that they were to have ten years in which to pay for the land. In their answer defendants distinctly state that the original understanding, as well as the understanding found in the contract, was, that the annual payment of $1,200 was to be made "with interest at the rate of six per cent per annum on deferred payments until the full amount constituting the selling price of said land should have been paid to plaintiffs herein." It seems to us that the court would have been justified upon the pleadings to award interest as the findings state it. Besides, if, at the trial, the question was presented, in view of the uncertainty arising out of the language used in the contract, we must presume that it was removed by the evidence. Furthermore, we think, when examined in its entirety, the contract is susceptible of the construction placed upon it by the court in the matter of interest.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.