| 87 | 619 |
| 89 | 93 |
| 87 | 619 |
| 97 | 71 |
| 87 | 619 |
| 98 | 33 |
| 87 | 619 |
| 114 | 493 |
| 114 | 541 |
| 87 | 619 |
| 123 | 212 |
| 87 | 619 |
| 125 | 362 |
| 87 | 619 |
| 131 | 144 |
| 87 | 619 |
| e146 | 688 |

[No. 13890.   Department One. — February 6, 1891.]

## M. N. AVERY, APPELLANT, *v.* G. A. CLARK ET AL., RESPONDENTS.

VENDOR'S LIEN — EQUITY. — A vendor's lien, properly so called, is not the result of any agreement or intention of the parties, but is a simple equity raised by the courts for the benefit of a vendor of real estate, after he has parted with the title.

ID. — EXPRESS LIEN. — So long as the title is retained, the vendor has an express lien for the unpaid purchase-money, which exists by virtue of the contract of sale and reservation of the title, and for which equity makes no special provision, but leaves the parties to rely upon their contract.

ID. — ASSIGNMENT. — The express lien of a vendor who retains the title is capable of assignment and enforcement by his assignee; but the implied lien raised by equity, in favor of a vendor who has parted with the title, is a privilege purely personal to the vendor, and is not assignable even by express contract, nor does it pass to the assignee of the vendee's obligation for the purchase-money.

ID. — WAIVER — SECURITY FOR PURCHASE-MONEY. — Although it is competent for the vendor to take security for the payment of the purchase price of the land which he has conveyed, and by express agreement not lose the right to resort to his implied lien, yet his taking such security is *prima facie* a waiver of the lien, and in the absence of some agreement to the contrary, the vendee will hold the land discharged from the vendor's lien.

ID. — MORTGAGE — EXPRESS LIEN FOR PURCHASE-MONEY — RELATION. — The fact that a mortgage which the vendor takes at the time of the conveyance is expressed to be for the purchase-money of the land conveyed does not prevent a waiver of the vendor's lien, nor can it have the effect to extend the mortgage lien by relation to the date of the contract of sale.

ID. — MECHANICS' LIENS — MORTGAGE — PRIORITY — SALE OF EQUITY. — The lien of a material-man for lumber furnished for a dwelling will take precedence of a mortgage of the land executed immediately upon a conveyance thereof, but after the time when the materials were commenced to be furnished, notwithstanding the mortgage was given for the purchase price of the land to a vendor who had sold it to the mortgagor prior to the furnishing of any materials, and who had conveyed it to the mortgagor on the same day that he received his own deed from a prior vendor from whom he had purchased it.

ID. — MORTGAGE AT TIME OF CONVEYANCE — PRIORITY — CONSTRUCTION OF CODE. — Section 2898 of the Civil Code, declaring that a mortgage for the price of real property, given at the time of its conveyance, has priority over all other liens created against the purchaser, subject to the recording laws, does not give priority to the mortgage over a lien for building materials furnished to the vendee of the land prior to the conveyance. Such lien has priority over the mortgage, under section 1186 of the Code of Civil Procedure.

ID. — NOTICE BY VENDOR OF EQUITY. — Under section 1192 of the Code of
   Civil Procedure, the vendor under a contract of sale of land, with knowl-
   edge that the vendee is constructing a building thereon, must give notice
   that he will not be responsible for the improvement, else his interest in
   the land to its entire extent becomes subject to liens filed pursuant to
   the law regulating mechanics' liens.
MECHANICS' LIENS — MATERIALS FURNISHED — CONSISTENCY OF FINDINGS —
   PRESUMPTION UPON APPEAL. — A finding that materials of a specified
   value were furnished by the claimant of a lien upon a dwelling-house to
   be used in its construction is not inconsistent with a finding that part of
   them were furnished by another party, who refused to deliver the same
   until paid for, and that the claimant paid such other party therefor; and
   it must be presumed, in support of both findings, where the appeal is upon
   the judgment roll without a bill of exceptions, that the evidence showed
   that the claimant of the lien received and furnished the portion of the
   materials in question under his contract with the owner of the dwelling-
   house.

APPEAL from a judgment of the Superior Court of Los
Angeles County.

The facts are stated in the opinion of the court.

*T. J. Carran,* and *Walter Bordwell,* for Appellant.

Mechanics' liens cannot take precedence of any lien of
which the claimant had notice at the time he com-
menced to furnish materials or perform labor. (Code
Civ. Proc., sec. 1186; *Warden's Assignee* v. *Armat,* 31
Gratt. 260.) The holder of a lien is not required to give
notice that he will not be responsible for improvements.
(*Williams* v. *Santa Clara M. Ass'n,* 66 Cal. 193.) A
vendor has only a lien for his purchase-money, whether
he retains the title as security or not. (*Parker* v. *Kelly,*
10 Smedes & M. 194; Jones on Mortgages, ed. 1889, c.
6; *Willis* v. *Wozencraft,* 22 Cal. 616, 617.) One who ad-
vances money, though for the express purpose of pay-
ing for materials furnished, is not entitled to a lien.
(*Godeffroy* v. *Caldwell,* 2 Cal. 491; 56 Am. Dec. 360.)
Materials furnished after the mortgage was given can
have no precedence over it. (*Manchester* v. *Searle,* 121
Mass. 418; *Capron* v. *Strout,* 11 Nev. 311–313.) The
deed and mortgage between the vendor and vendee

were but the continuance of the pre-existing relations of the parties. (*Stoner* v. *Neff*, 50 Pa. St. 258; Jones on Mortgages, secs. 189, 217.)

*Wells, Guthrie & Lee, C. McFarland,* and *Albert Crutcher,* for Respondents.

A vendor's lien is a personal privilege of the vendor, and is not assignable. (*Dingley* v. *Bank of Ventura,* 57 Cal. 470; *Ross* v. *Heintzen,* 36 Cal. 313; *Bancroft* v. *Cosby,* 74 Cal. 584; *Baum* v. *Grigsby,* 21 Cal. 172; 81 Am. Dec. 153; *Williams* v. *Young,* 21 Cal. 227.) The lien was merged and extinguished by the mortgage. Robbins, by consenting to and advising the erection of the dwelling, is estopped from claiming a prior lien. (*Escolle* v. *Franks,* 67 Cal. 137; *Fishbeck* v. *Phœnix Ins. Co.,* 54 Cal. 422; *Dikeman* v. *Norrie,* 36 Cal. 94; *Kennedy* v. *Dunn,* 58 Cal. 340; *Elliott* v. *Wohlfrom,* 55 Cal. 384; Herman on Estoppel, 1068; *Masterson* v. *West End N. G. R. Co.,* 72 Mo. 342.) Robbins was bound by the lien by reason of not disaffirming responsibility by notice. (Code Civ. Proc., sec. 1192; *Phelps* v. *Maxwell's Creek G. M. Co.,* 49 Cal. 336; *Moore* v. *Jackson,* 49 Cal. 109; *Fuquay* v. *Stickney,* 41 Cal. 583.) The whole lien relates to the commencement of supplying materials, and no part can be postponed to the mortgage. (*Germania B. & L. Ass'n* v. *Wagner,* 61 Cal. 349; *Barber* v. *Reynolds,* 44 Cal. 520; *Tibbetts* v. *Moore,* 23 Cal. 208; *McCrea* v. *Craig,* 23 Cal. 522; *Lumber Co.* v. *Gottschalk,* 81 Cal. 641.)

HARRISON, J. — This is an action for the foreclosure of a mortgage made by the defendants Humeston to one Robbins, and by him assigned to the plaintiff. The defendants, other than the mortgagors, are claimants of mechanics' liens for labor and materials furnished in the construction of a dwelling-house upon the premises described in the mortgage. Judgment was rendered for a sale of the premises, and directing that out of the pro-

ceeds of the sale the claims of the respondents (McCarthy, Clark & Humphreys) should have priority in payment over the mortgage claim of the plaintiff. From this judgment the plaintiff has appealed, upon the ground that his claim was the first lien upon the lands.

The case is here upon the judgment roll alone, and presents the following facts: September 24, 1888, A. S. Robbins, the plaintiff's assignor, being in possession of a lot of land in Los Angeles under a contract of purchase from one Griffes, who was the owner, made an agreement with the defendant Cassie M. Humeston to sell her the same for the sum of two thousand two hundred dollars, of which she then paid two hundred dollars, and took possession of the land. This agreement was never recorded. In the latter part of October of the same year, the defendant R. C. Humeston, husband of said Cassie, with her consent, and at the advice of Robbins, began the construction of a dwelling-house upon the lot, which was completed April 16, 1889. No written contract was made for the construction of the house, and its value or cost exceeded one thousand dollars.

January 5, 1889, Griffes executed to Robbins a deed of the lot, and on the same day Robbins conveyed it to Mrs. Humeston, and at the same time Mrs. Humeston and her husband gave him their four promissory notes for five hundred dollars each, for the unpaid amount of the price thereof, and executed the mortgage in question to secure their payment. Both of the deeds were recorded on the day of their date, and the mortgage two days thereafter.

March 19, 1889, the plaintiff purchased the mortgage and notes from Robbins, who on that day "assigned" them to him.

Prior to the date of this mortgage, viz., December 3, 1888, the respondents Clark & Humphreys entered into a verbal contract with R. C. Humeston to furnish lumber and other materials as might be required in the

construction of the house, and between that day and April 10, 1889, furnished materials which were used in such construction to the value of $2,017, for which they afterwards filed their claim of lien. At the time of making this contract they knew that Mrs. Humeston claimed the land under a contract, and was indebted to Robbins for the purchase-money to the extent of two thousand dollars. The court does not find on what day Clark & Humphreys commenced to furnish the materials, other than that it was "between the third day of December, 1888, and April 10, 1889"; but it is conceded in the brief of counsel for appellant that they commenced to furnish them on the third day of December, 1888.

It is contended by the appellant that by virtue of the contract of sale between Robbins and Mrs. Humeston, there was created in favor of Robbins a vendor's lien for the unpaid portion of the purchase-money, which was preserved in the mortgage that was taken at the time Robbins conveyed the property to her, and that the right to enforce this lien passed to the plaintiff by the assignment to him of the notes and mortgage, and has priority over the liens of the respondents.

A vendor's lien is not the result of any agreement or any intention of the vendor and vendee, but is a simple equity raised by courts for the benefit of the vendor of real estate. It is a privilege purely personal, and cannot exist in favor of any but the vendor. It does not exist in his favor if he has other security for the land which he has conveyed. It is not assignable, even by express contract, nor does it pass to the assignee of the vendee's obligation for the purchase-money.

It has been uniformly held in this state that this lien is lost by any act on the part of the vendor manifesting an intention on his part not to rely upon the lien, and that, although it is competent for him to take security for the payment of the purchase price of the land, and by an express agreement not lose his right to resort to

this lien, yet his taking such security is *prima facie* a waiver of the lien, and, in the absence of some agreement to the contrary, the vendee will hold the land discharged from such lien. In *Hunt* v. *Waterman*, 12 Cal. 301, the vendor had taken a mortgage on the property sold, for the payment of the entire purchase-money, but by reason of some defect the mortgage was unavailing as a security. He then brought an action to foreclose his vendor's lien. The court says: "The question in this case is directly presented whether in this state a vendor's lien exists when a mortgage security is taken for the purchase-money. Decisions of the various courts have been numerous on this branch of jurisprudence, and are not harmonious. The better rule, supported by the weight and number of authorities, is to hold the silent lien of the vendor extinguished whenever the vendor manifests an intention to abandon, or not to look to it; and it is held that he does this whenever he takes other and independent security upon the same land, or a portion of the same land, or on other land. When he looks to other security, he loses this tacit lien." In *Baum* v. *Grigsby*, 21 Cal. 172, 81 Am. Dec. 153, Judge Field, delivering the opinion of the court, says: "When any other independent security is taken, — as a mortgage on the land or upon other property, or the personal responsibility of a third person, — the lien is held to be waived, unless there is at the time an express agreement for its retention. The taking of a distinct, independent security is presumptive evidence of the waiver."

It is also the established rule in this state that this lien is not assignable, and that the assignee of the right to recover the money for which the land was sold cannot enforce the lien. (*Baum* v. *Grigsby*, 21 Cal. 172; 81 Am. Dec. 153; *Camden* v. *Vail*, 23 Cal. 633.) In *Baum* v. *Grigsby*, 21 Cal. 172, 81 Am. Dec. 153, the court says: "The cases which deny that the lien passes with the personal security of the vendee do not rest, except in

a few instances, upon the want of a special assignment
from the vendor, but upon the ground that the lien is
in its nature unassignable; and to that conclusion we
have arrived. . . . . The assignee of a note given for
the purchase-money has not parted with the property
which he seeks to reach, in consideration of the note he
has received. He has never held the property, and has,
therefore, no special claims upon equity to subject it to
sale for his benefit. The particular equity of the vendor
in this respect cannot, in the nature of things, be asserted
by another."

These principles were afterward formulated in the
Civil Code, which provides: —

"Sec. 3046. One who sells real property has a ven-
dor's lien thereon, independent of possession, for so
much of the price as remains unpaid and unsecured
otherwise than by the personal obligation of the buyer.

"Sec. 3047. Where a buyer of real property gives to
the seller a written contract for payment of all or part
of the price, an absolute transfer of such contract by the
seller waives his lien to the extent of the sum payable
under the contract."

Properly speaking, a vendor's lien does not exist until
the vendor has parted with his title. So long as he
retains the title he cannot be said to have any implied
lien upon the land. The security which he then has for
the purchase-money is created by express reservation,
and cannot be impaired by any act of the vendee. This
is an *express* lien existing by virtue of a contract exe-
cuted between the parties, and is capable of assignment
and enforcement by his assignee. (*Taylor* v. *McKinney*,
20 Cal. 618.) Such a lien is open and manifest to the
world, and is entirely different from the secret, invisible
lien which the law implies in behalf of the vendor when
he parts with the title, and which is known only to
the parties to the transaction, and those to whom they
may communicate the fact. For such a lien equity

makes no special provision, but leaves the parties to rely upon the contract which they have executed between themselves.

Whatever was the nature of the security held by Robbins prior to January 5, 1889, by virtue of the contract of sale between him and Mrs. Humeston, whether it was a vendor's lien or a lien in the nature of a mortgage, or whether, inasmuch as he did not himself have the title to the land, it was a security differing from either of these, when he took the promissory notes of Mrs. Humeston and her husband, secured by their mortgage upon the land which he then conveyed to her, he waived whatever lien he had prior to that date, and thereafter had only the lien that existed by virtue of the mortgage. The unpaid price of the land did not thereafter "remain unsecured otherwise than by the personal obligation of the buyer." In addition to her personal obligation, he had the personal obligation of her husband, together with their mortgage on the land to secure the same. By these acts his vendor's lien, if he had any, was extinguished, and his prior security was merged in the mortgage, and became an open, public, and express lien. Nor did the insertion in the mortgage of the clause, "This mortgage is given in part-payment of the purchase-money of the within described property," have the effect to extend the lien, by relation, to the date of the contract of sale. These words do not constitute or imply any agreement or intention for the preservation of a prior lien. The fact that the mortgage which the vendor takes at the time of the conveyance is expressed to be for the purchase-money of the land is none the less a waiver of his vendor's lien.

The plaintiff in this case has, however, only such rights of lien upon the land as Robbins could transfer, and such as he did transfer on the 19th of March, 1889, by his assignment of the notes and mortgage. He does not in his complaint allege any assignment to him of

any other lien than was created by the mortgage, — his allegation being that "on the nineteenth day of March, 1889, for a valuable and sufficient consideration, said plaintiff purchased said mortgage and notes from said A. S. Robbins, who then and there duly assigned, transferred, set over, and delivered the same to the plaintiff"; and the finding of the court is in accordance with this allegation. We have seen above that as the assignee of Robbins he is not entitled to assert any vendor's lien in his own behalf.

Section 1186 of the Code of Civil Procedure declares that "the liens provided for in this chapter are preferred to any lien, mortgage, or other encumbrances which may have attached subsequent to the time when . . . . the materials were commenced to be furnished."

Inasmuch as the only lien which the plaintiff has is that of his mortgage, which did not attach to the land until January 5, 1889, and as the respondents commenced to furnish the materials for which their lien was allowed prior to that date, it follows that their lien was preferred to the lien of the plaintiff.

Nor do the provisions of section 2898 of the Civil Code give to the plaintiff, under the facts of this case, priority for the lien of his mortgage in disregard of this section. Section 1192 of the Code of Civil Procedure provides that "Every building . . . . constructed upon any lands with the knowledge of the owner, or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming an interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter," unless such person shall give notice that he will not be responsible for the same. Not only did Robbins fail to give any such notice, but the court finds that he "consented to and advised the construction of said dwelling-house." Although he was not the "owner" of the lands until

January 5, 1889, yet by virtue of his contract with Griffes, he was until that date, and for several months prior to the time when the respondents began to furnish materials, a "person having or claiming an interest therein," and that interest, to its entire extent, became subject to their lien.

The principle upon which liens are allowed in favor of mechanics and material-men is, that their labor and materials have given value to the buildings upon which they have been expended, and that it is inequitable that the owner of the land, who has contracted with them for such improvement, or who has stood by and seen the improvement in progress without making objection, should have the benefit of their expenditures without making compensation therefor. Even in the absence of the foregoing provisions of the code, it would be in contravention of well-established rules if, under the facts of this case, the lien of Robbins should have priority over that of the respondents. Having advised the construction of the dwelling-house upon land then owned by him, under the most elementary principles of equity he would not be permitted to avail himself of this increased value for the purpose of enhancing his own security at the expense of those who had themselves given value to the land.

There was no error in allowing to Clark & Humphreys as a portion of their claim, the sum of $190 for certain glass used in the building. The court found that Clark & Humphreys furnished to the defendant R. C. Humeston materials of the value of $2,037.84, to be used in the construction of the dwelling-house, and that "of and included in said amount is a claim for glass, amounting to $190, furnished by the firm of Schlesinger & Goldwater," and that Schlesinger & Goldwater refused to deliver the same until paid for. The court does not find that Schlesinger & Goldwater furnished the glass to Humeston, but does find that the material fur-

nished by Clark & Humphreys to Humeston was of the above value, and that included in this amount was this claim for glass which Schlesinger & Goldwater refused to deliver until paid for, and that Clark & Humphreys paid Schlesinger and Goldwater for the glass. These findings are entirely consistent with the fact that Clark & Humphreys agreed with Humeston to furnish the glass for the dwelling-house, and for that purpose bought the same from Schlesinger & Goldwater, but that Schlesinger & Goldwater refused to deliver the glass to them until it was paid for, and that thereupon Clark & Humphreys paid for the glass, and furnished it according to their contract with Humeston. As the appeal is taken upon the judgment roll without any bill of exceptions, we must assume that the evidence was sufficient to support all the findings of the court.

The foregoing principles, which give priority to the lien of Clark & Humphreys, are also applicable to the lien of McCarthy. We cannot say that the description of the land in the claim of lien filed by him is not "sufficient for identification." (Code Civ. Proc., sec. 1187.)

The judgment of the court below is affirmed.

Paterson, J., and Garoutte, J., concurred.

Hearing in Bank denied.