[No. C010144. Third Dist. July 31, 1992.]

HAROLD A. BROCK et al., Plaintiffs and Respondents, v.
FIRST SOUTH SAVINGS ASSOCIATION, Defendant and Appellant.

## Counsel

Miller, Starr & Regalia, Edmund L. Regalia, Gary E. Rosenberg, Michael J. Hassen, Kronick, Moskovitz, Tiedemann & Girard, and Sherri M. Kirk for Defendant and Appellant.

Jay-Allen Eisen, Ann Perrin Farina, Paul Nicholas Boylan and Douglas C. Phimister for Plaintiffs and Respondents.

## Opinion

**SIMS, Acting P. J.**—In this case we must decide which of two liens arising simultaneously out of a single transaction for the sale of real property—a vendor's lien and a purchase-money deed of trust—has priority. We shall hold that under common law principles codified in the pertinent statutes, the purchase-money deed of trust prevails.

Plaintiff and respondent Harold A. Brock[1] sold the property in question to a corporation, but did not receive the full purchase price from the buyer; instead he accepted the buyer's unsecured promissory notes for a part of the price, while the buyer obtained a loan from defendant and appellant First South Savings Association (First South), secured by a deed of trust on the property, for the balance of the price. After escrow closed, the buyer defaulted on the loan and the promissory notes, and First South foreclosed on the property. Brock subsequently filed suit against First South, asserting the priority of his vendor's lien over First South's purchase-money deed of trust. Following a court trial the trial court entered judgment for Brock, from which First South appeals.

On appeal each party relies on provisions of the Civil Code which, considered in isolation, would appear to give priority to that party's lien. (All otherwise undesignated statutory references are to the Civil Code.) Appellant First South invokes section 2898, subdivision (a) (section 2898(a)), which provides: "A mortgage or deed of trust given for the price of real property, at the time of its conveyance, has priority over all other liens created against the purchaser, subject to the operation of the recording laws."[2] Respondent Brock invokes section 3046, which provides that "One who sells real

---

[1]The suit was filed by Harold and Eleanor Brock, husband and wife, who jointly owned the real property in question. However, only Harold Brock played an active part in the transaction for the sale of the property. For convenience we refer to Harold Brock as plaintiff.

[2]Section 2898(a) was originally the entire provision. A 1989 amendment added subdivision (b), which is not pertinent to this case, and designated former section 2898 as section 2898(a), but did not alter the substance of the former provision. (Stats. 1989, ch. 698, § 3.)

property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer[,]" and section 3048, which provides that such a lien is "valid against everyone claiming under the debtor, except a purchaser or encumbrancer in good faith and for value."

The parties cite no California case, and we have found none, that has decided whether section 2898(a) or section 3048 controls in a factual setting where both provisions appear applicable. We shall conclude the purchase-money deed of trust has priority. Accordingly, we reverse the judgment.

### Factual and Procedural Background

Brock filed his complaint in March 1986, alleging various causes of action sounding in contract, tort, and equity against numerous defendants, most of whom settled. Only the eighth cause of action, to establish a vendor's lien against First South, is germane to this appeal.

Brock alleged he had owned the real property at issue, that he had sold it to a corporation for $800,000, and that $345,000 of the purchase price remained unpaid. He alleged further that First South "was aware of the entire transaction including the sales price and terms, and that [plaintiff] would carry back an unsecured note that gives rise to [plaintiff's] vendor's lien . . . ."

The matter was tried by court trial in January 1990. First South contended, among other things, that under section 2898(a) purchase-money liens have priority over other liens against the purchaser as a matter of law.

The trial court found that First South had known of the unsecured promissory notes before close of escrow. The trial court concluded that First South did not have priority because it was not a good faith encumbrancer. The trial court subsequently entered judgment in favor of Brock, finding that Brock had a vendor's lien for $300,000 plus interest dating back to the date the land was sold, which had priority over First South's lien. The judgment ordered the land to be sold forthwith. This appeal followed.

### Discussion

#### I

As we have noted, section 3048 says a vendor's lien is "valid against every one claiming under the debtor, except a purchaser or encumbrancer in

good faith and for value." If First South was a good faith encumbrancer, then section 3048 dictates that First South should prevail in this dispute. However, First South was not an encumbrancer in good faith.

An encumbrancer in good faith and for value means a person who has taken or purchased a lien, or perhaps merely the means of obtaining one, and who has parted with something of value in consideration thereof. (*Fulkerson* v. *Stiles* (1909) 156 Cal. 703, 706 [105 P. 966].) In addition, a "*good faith*" encumbrancer is one who acts *without knowledge or notice* of competing liens on the subject property. (See, e.g., *Combination Land Co.* v. *Morgan* (1892) 95 Cal. 548, 552 [30 P. 1102]; Brown v. *Johnson* (1979) 98 Cal.App.3d 844, 851 [159 Cal.Rptr. 675]; *Schut* v. *Doyle* (1959) 168 Cal.App.2d 698, 702-703 [336 P.2d 567]; 3 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 8:38, p. 346; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 209, p. 412.)

In this case, the trial court expressly found that First South had knowledge of the details of the financing of the property and that a vendor's lien rights would accrue at the closing. No party challenges the sufficiency of the evidence underlying this finding. We therefore conclude that, because First South had notice and knowledge of the creation of a vendor's lien upon the close of escrow, First South is not an encumbrancer in good faith. This does not mean, as Brock contends, that Brock wins. Rather, this conclusion means that the dispute cannot be adjudicated by looking exclusively at section 3048. The question that remains is: does the priority given by section 2898(a) prevail over the validity of the vendor's lien granted by section 3048?

## II

When a purchase-money mortgage or deed of trust and a vendor's lien arise out of a single sales transaction, as here, they are deemed to arise simultaneously as a matter of law. (See *Van Loben Sels* v. *Bunnell* (1898) 120 Cal. 680, 683-684 [53 P. 266] [third party purchase-money lien]; *Avery* v. *Clark* (1891) 87 Cal. 619, 625 [53 P. 266] [vendor's lien]; *Edwards-Town, Inc.* v. *Dimin* (1970) 9 Cal.App.3d 87, 92 [87 Cal.Rptr. 726]; 3 Powell on Real Property (1991 rev.) ¶¶ 450[2], 455.1, pp. 37-161–37-162, 37-224–37-228.) As noted above, no published California case has hitherto construed the interrelationship of sections 2898(a) and 3048 in such a fact setting.

Beginning with the plain language of the statutes, we observe an apparent facial conflict between section 2898(a) and section 3048: each appears at first sight to give priority to the lien described therein over all other claims,

conditioned only on whether other claimants have notice of that lien. The parties offer ingenious explications of the statutory language, each attempting to drive a wedge between these provisions and to prove that, properly construed, they favor that party; however, these explications fail to persuade us that we can determine which statute controls here based on their literal language alone.

First South contends first that section 2898(a)'s expression "priority over all other liens created against the purchaser" must be read literally, but that the parallel expression of section 3048—"valid against every one claiming under the debtor"—cannot be read as pertaining to priority. In First South's view, if the Legislature had intended to give priority to vendor's liens it would have used the word *priority*, and its failure to do so proves that it must have meant something else. What the Legislature really meant by "valid," according to First South, was simply that the vendor's lien "exists" under the circumstances defined in section 3046.

Brock retorts that First South's attempted differentiation between "priority" and "validity" is "a distinction without a difference." We agree. First South's interpretation of "valid" in section 3048 violates basic canons of construction and ignores the case law construing this term.

■ ■ We are required to construe statutory language according to its ordinary and usual purport, to give effect to every word if possible, and to avoid any construction which would render all or part of a statute surplusage. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) First South's proposed reading of "valid" in section 3048 breaks all these rules. ■ According to both ordinary and legal dictionaries, "valid" first of all means "having legal strength or force, *incapable of being rightfully overthrown or set aside*." (Webster's New Internat. Dict. (3d ed. 1981) p. 2529; Black's Law Dict. (5th ed. 1979) p. 1390, italics added.) If a lien is "incapable of being rightfully overthrown or set aside," then it must have priority over competing claims. Furthermore, to read "valid" in section 3048 as First South proposes would render the immediately following language in the statute superfluous or unintelligible: the expression "valid against every one claiming under the debtor" has no discernible meaning on its face, and First South volunteers none. Finally, if section 3048 were intended merely to provide that a vendor's lien exists under the circumstances defined in section 3046, then section 3048 as a whole would be surplusage because section 3046 already provides for the existence of this lien and sets out the conditions under which it arises.

Moreover, the case law construing section 3048, which First South ignores in this context, has consistently interpreted it as a provision dealing with the

*priority* of the vendor's lien against competing interests. (See, e.g., *Avery, supra,* 87 Cal. at pp. 627-629; *Schut v. Doyle, supra,* 168 Cal.App.2d at p. 702.)

For all these reasons, First South's attempt to show that "validity" under section 3048 is something less than "priority" under section 2898(a) fails.

First South next contends that section 2898(a)'s condition on the purchase-money lien's priority—"subject to the operation of the recording laws"—is narrower than section 3048's parallel condition "except a purchaser or encumbrancer *in good faith* and for value." (Italics added.) First South argues that, unlike the latter condition, which does not depend on whether the lien has been recorded, section 2898(a)'s proviso applies only where the purchase-money lienholder has notice of a *recorded* preexisting lien. If it were otherwise, according to First South, section 2898(a) would be nullified, because then an unrecorded vendor's lien would always have priority pursuant to section 3048 where the purchase-money lienholder knew of the vendor's lien and therefore could not claim "good faith." Therefore, the "good faith" condition cannot be read into section 2898(a), and an unrecorded vendor's lien cannot defeat the priority of a purchase-money mortgage or deed of trust.

Brock replies that First South's reading of "subject to the operation of the recording laws" ignores what those laws actually provide. According to Brock, it cannot be the case that this proviso applies only to recorded interests, because under the recording laws an unrecorded interest "is valid as between the parties thereto and those who have notice thereof" (§ 1217), and First South cites no authority holding that such notice does not come within the scope of section 2898(a)'s proviso. Furthermore, mechanics' liens, even when not immediately recorded, have priority over subsequent purchase-money deeds of trust; therefore the general rule First South argues for does not exist. (§ 3134; *Avery, supra,* 87 Cal. at pp. 626-627.) Brock's contentions are unpersuasive.

Brock's first argument depends on a misreading of section 1217. Contrary to Brock's assertion, section 1217 does not provide that "An unrecorded *interest* is valid as between the parties thereto and those who have notice thereof"; it provides that "An unrecorded *instrument* is valid as between the parties thereto and those who have notice thereof." Instruments capable of being recorded are enumerated in Government Code section 27280 et seq. Under these provisions it has long been held that "instrument" invariably means a "written paper or instrument signed and delivered by one person to another, transferring the title to or creating a lien on property, or

giving a right to a debt or a duty." (*Hoag* v. *Howard* (1880) 55 Cal. 564, 565; Brown v. *Johnson, supra,* 98 Cal.App.3d at p. 849.) ■ The vendor's lien is not an instrument in this sense; rather, it is "a mere personal privilege to resort to land as a means of enforcing a land sale contract . . . of no operative force or effect until established by a decree of court and [assertable] only by a suit in equity for the purpose of obtaining such a decree." (*Brown, supra,* 98 Cal.App.3d at p. 851, citations omitted.) Therefore section 1217 does not defeat First South's interpretation of the expression "subject to the operation of the recording laws" (§ 2898(a)), because section 1217 applies only to "instruments" and the vendor's lien is not an instrument within the meaning of this provision.

Brock's argument that section 2898(a) cannot give absolute priority to the purchase-money lien because a prior unrecorded mechanic's lien takes precedence (§ 3134) amounts to knocking down a straw man. First South does not assert, and does not need to assert, that the purchase-money lien prevails over every other lien without regard to priorities conferred on other types of lien by statute; it asserts only that section 2898(a) gives the purchase-money lien priority over the vendor's lien.

■ However, First South's construction of "subject to the operation of the recording laws" in section 2898(a) fails for other reasons. A party may have actual notice of an unrecorded interest in real property even if it is not of a kind that can be reduced to an "instrument" within the meaning of section 1217 and Government Code section 27280. (See 3 Miller & Starr, *op. cit. supra,* § 8:45, pp. 355-357.) The purpose of the recording laws is to protect bona fide purchasers and encumbrancers, not those who choose to remain indifferent of prior interests. (§§ 1107, 1214; *Beach* v. *Faust* (1935) 2 Cal.2d 290, 292-293 [40 P.2d 822].) It would defeat that purpose to allow a purchaser or encumbrancer to claim that "the operation of the recording laws" did not bar his claim of priority as against an already existing unrecorded interest *which he actually knew about* merely because he did not receive notice through a recorded instrument. In the absence of authority holding that section 2898(a) may be construed so as to exclude actual notice of an unrecorded prior interest from its purview, we decline to adopt that interpretation of the statute. Therefore, we conclude that "subject to the operation of the recording laws" means essentially the same thing as section 3048's condition "except a purchaser or encumbrancer in good faith and for value."

■ First South additionally asserts that section 2898(a) controls because it is more specific than section 3048. We disagree. Each provision deals with a specific type of lien and establishes rules of priority governing that lien. Neither is more specific or general than the other.

Brock in turn proposes readings of sections 2898(a) and 3048 with which we cannot agree. First, Brock contends that section 2898(a)'s grant of priority to a purchase-money mortgage or deed of trust "over all other liens created against the purchaser" cannot apply to vendor's liens because a vendor's lien is not a "true lien" (i.e., a specific charge on real property), but only an equitable trust. Not only is this argument unsupported by authority on point, but it is flatly at odds with the express language of sections 3046 and 3048 and with the overall statutory scheme. Section 3046 provides in relevant part: "One who sells real property has a vendor's *lien* thereon . . . ." Section 3048 refers to "The *liens* defined in sections three thousand and forty-six and three thousand and fifty . . . ." Both provisions form part of chapter 6 ("Other *Liens*") of title 14 ("*Lien*") of the Civil Code. ▮▮▮ Whatever may be said of the vendor's lien as an equitable trust, the Legislature has unequivocally chosen to treat it as a lien within the meaning of title 14. Brock cannot escape the priority language of section 2898(a) merely by playing semantic games with the concept of "true liens."

## III

In addition to the statutory arguments discussed above Brock offers other grounds for upholding the trial court's judgment. None suffices.

▮▮▮ Brock states correctly that under section 3046, in every case where the seller has not been paid the full purchase price and lacks security, the vendor's lien exists by operation of law unless the seller intends to waive it, which the trial court found Brock had not done. (*Avery, supra,* 87 Cal. at p. 625; *Finnell* v. *Finnel* (1909) 156 Cal. 589, 595 [105 P. 740].) Relying on *McGreevy* v. *Constitution Life Ins. Co.* (1965) 238 Cal.App.2d 364, 368, 370-371 [47 Cal.Rptr. 711], Brock then asserts that when the seller has not agreed to waive or subordinate the vendor's lien, it has priority as a matter of law over a purchase-money deed of trust.[3] *McGreevy* does not aid Brock because it did not hold that a vendor's lien had priority over a purchase-money deed of trust *arising simultaneously*, as in the present case. In *McGreevy* the parties' liens did not arise out of a single sales transaction. Rather, plaintiff seller offered to sell oil and gas leases to an oil broker, who subsequently resold them to a third party which obtained a purchase-money loan from defendant insurance company. (*Id.* at pp. 366-368.) Because defendant was a subsequent encumbrancer, the court applied the "good-faith encumbrancer" clause of section 3048 and determined that the trial court's finding against defendant on that point was supported by substantial evidence. (*Id.* at pp. 370-371.) Therefore defendant's only possibility of prevailing was to show plaintiff had waived his vendor's lien, which defendant

---

[3]Because we hold that First South's lien had priority over Brock's lien regardless of whether Brock waived his lien, we need not decide whether the trial court was correct in concluding Brock had not done so.

could not do. (*Id.* at pp. 368, 371.) On these facts the court had no occasion to consider section 2898(a); thus its holding does nothing to establish that section 3048 controls in a case where section 2898(a) also applies, as here.

Brock further asserts that the real issue in this case is "priority between two purchase-money interests, arising at the same moment and for the same purpose."[4] Relying on authority holding that where both a seller and a third party lender hold purchase-money mortgages the courts ordinarily give preference to the seller (3 Powell, *op. cit. supra,* ¶ 455.1, p. 37-227), and on the rule purportedly stated in *Bartley* v. *Karas* (1983) 150 Cal.App.3d 336 [197 Cal.Rptr. 749], that where a clash exists between liens arising from a contract of sale and a purchase-money deed of trust "they should be held to take effect in such order as will best carry out the intent and secure the rights of all parties" (*id.* at p. 341), Brock concludes that his lien should have priority because First South was aware of the facts giving rise to his lien when it agreed to lend money to the buyers. We disagree. First, the holdings of courts in cases dealing with competing purchase-money mortgages are irrelevant because Brock did not have such a mortgage.[5] Second, Brock's summary of *Bartley, supra,* is slightly off the mark: the lien arising from a contract of sale in that case was not a vendor's lien but a promissory note in favor of the seller's real estate agent as payment of his commission on the transaction. (150 Cal.App.3d at p. 339.) Since the court in *Bartley* had no occasion to consider either section 2898(a) or section 3048 and did not do so, the *Bartley* rule does not aid Brock.

## IV

Since the parties' proposed constructions of sections 2898(a) and 3048 fail to answer the question which statute controls here, and no case law on point exists, we turn to the history of the provisions. In doing so, we note that the

---

[4]Brock does not attempt to reconcile this contention with his argument that his lien should prevail because First South was not a good faith encumbrancer due to its knowledge of Brock's already existing lien.

[5]3 Powell, *op. cit. supra,* paragraph 455.1, on which Brock relies for this point, cites in turn to Nelson and Whitman, Real Estate Finance Law (2d ed. 1985) section 9.2, page 682. Resort to the latter treatise discloses the following passage, which demonstrates why cases involving competing third party mortgages are inapposite here: "The vendor of land may have security in the property for the payment of the purchase price in a variety of ways. She may frame the transaction in the form of an installment contract for the sale of the land, retaining the legal title in herself. *At the opposite extreme, she may have conveyed the property before receiving payment without any arrangement for security, in which case she may nevertheless be given an equitable grantor's lien. . . . Usually, however, she will convey title to the buyer, receive at the time part of the purchase money and receive back as part of the same transaction a mortgage upon the property to secure the balance of the purchase money. This last is the ordinary purchase money mortgage . . . .*" (*Id.,* § 9.1, p. 675, fns. omitted, italics added.)

provisions at issue in this case were all adopted as part of the 1872 Civil Code. (*Van Loben Sels, supra,* 120 Cal. at p. 683.)

 The Code Commissioners' annotations to the 1872 Code, which we may properly consider as indicia of the Legislature's intent (*People* v. *Garfield* (1985) 40 Cal.3d 192, 199 [219 Cal.Rptr. 196, 707 P.2d 258]), make clear that these provisions simply codified common law principles. (2 Ann. Civ. Code (1872, Haymond & Burch) §§ 2898, 3046, pp. 263-264, 311-313.) Therefore, we must construe these provisions as continuations of the common law. (§ 5; *Estate of Elizalde* (1920) 182 Cal. 427, 433 [188 P. 560]; see generally 2A Sutherland, Statutory Construction (5th ed. 1992) §§ 50.01, 50.05, pp. 89-98, 108-115.) As we shall see, the priority of the purchase-money mortgage or deed of trust over a simultaneously arising vendor's lien was well established in the common law.

The leading common law case on the relationship between purchase-money mortgages and vendor's liens (judging by the frequency of its citation in later cases and treatises) is *Fisk* v. *Potter* (1865) 41 N.Y. (2 Keyes) 64. The court in *Fisk* carefully expounded the legal and equitable doctrines giving rise to each type of lien and explained why priority should be given to the purchase-money mortgage where both arise out of a single sales transaction.

The court in *Fisk* noted at the outset: ". . . the law of equity which establishes the right of lien in the vendor for unpaid purchase-money of the lands sold to the vendee, is an anomaly in the law, . . . [its] existence . . . is generally made to depend upon the peculiar state of facts and circumstances surrounding the particular case, that is whether or not a case of natural equity is established; and, if so, whether it is not made to yield to higher or superior equities in some other person . . . ." (41 N.Y. (2 Keyes) at p. 68.) Unless a subsequent purchaser has actual notice of this lien, "it remain[s] a secret invisible lien or trust, undiscoverable by any search of the public records . . . known only to the [vendor] and his immediate vendee, . . ." (*Id.* at p. 69.) It had long been held, most notably by Chief Justice Marshall in *Bayley* v. *Greenleaf and Others* (1822) 20 U.S. 46 [5 L.Ed. 393], that equity would not uphold such a "secret" lien against the claim of a good faith purchaser without notice. (*Fisk, supra,* 41 N.Y. (2 Keyes) at pp. 71-72.)

Assuming that a purchase-money mortgage and a vendor's lien arise at the same time, "[t]his presents directly the question, which of two liens occurring at the same instant of time has the superior equity, the one [the vendor's lien] a constructive one only, arising upon a secret trust by operation of law, or based upon the ground of its being a natural equity connected with the consideration of the property purchased, the other [the purchase-money

mortgage] arising upon a specific legal lien based upon written contract, and made matter of public record?" (*Fisk, supra,* 41 N.Y. (2 Keyes) at p. 73.) The court answered the question as follows: "However potent this latent, *unwritten* equity lien has been regarded in cases between vendor and vendee . . . , it cannot be held in a court of equity that it possesses a higher claim than would a *written* and unrecorded mortgage. In regard to the latter, a search of the public records protects a purchaser against it. Upon every sound principle of the law of equity, as well as of public policy, bona fide purchasers and mortgagees who are about to invest money on the faith of title, should be held to have satisfied the demands of reasonable diligence, when they find an unincumbered [*sic*] record. [¶] Upon the question of the superiority of liens, between such as are called *legal* and those which are called *equitable*, it is a maxim, coeval with the law of equity, that 'where equities are equal the law must prevail.' (1 Fonbl. Eq., ch. 4, § 25 and note; Francis' Maxims, 61; Story's Eq. Jur., § 64c.) In Hargrave and Butler's notes to Coke upon Littleton 290 b, the rule is thus laid down: 'If a person has the *legal* estate or interest in the subject-matter in contest, he must, necessarily, prevail at *law* over him whose right is only *equitable*, . . . This advantage he carries with him so far, even into a court of *equity*, that, if the equitable claims of the parties are of equal force, equity will leave him who has the *legal* right in full possession of it, and will not do any thing to reduce him to an equality to the other, who has the equitable right only.' " (*Id.* at pp. 74-75, italics in original.)

The court summarized its view of the equities thus: "Whenever the law gives this lien to a vendor, it gives it to him only for the purpose of working out an act of justice for him. The lien does not exist in his favor, as an inflexible rule, and, if it ever did, it ceases to exist when circumstances justify such a conclusion. It would be the clearest injustice to hold its existence . . . against *bona fide* mortgagees . . . . It would be carrying the doctrine of these secret liens to an extent never before carried in any reported case in this State. . . . [I]t would render insecure all dealing in titles, and the object of, and securities intended by, our recording acts would, in effect, be destroyed." (*Fisk, supra,* 41 N.Y. (2 Keyes) at p. 76.)

The rule of *Fisk, supra,* has been restated as authoritative in numerous treatises dealing with the common law of real property and has been followed in cases from various foreign jurisdictions. Treatises citing the *Fisk* rule include 4 Pomeroy, Treatise on Equity Jurisprudence (5th ed. 1941) section 1253a, page 751, footnote 6 ("Where a legal lien, by mortgage or otherwise, on the land, or a part thereof, is created at the same time as the grantor's equitable lien, such legal lien has the preference"), and 2 Jones on Liens (3d ed. 1914) section 1080 ("Priority of lien by mortgage over equitable lien"), page 32 ("As between this latent lien in equity, and a legal lien

by mortgage arising at the same time, the latter will prevail"). Foreign cases citing the *Fisk* rule or reaching results consistent with it include *Harms* v. *Frost* (1896) 68 Ill.App. 186, 195-196, 198-199 [47 N.E. 357]; *Neff* v. *Crumbaker* (1883) 40 Ohio St. 85, 86; *Campbell* v. *Sidwell* (1899) 61 Ohio St. 179 [55 N.E. 609, 610-611]; *Larscheid* v. *Hashek Mfg. Co.* (1910) 142 Wis. 172 [125 N.W. 442]; and *Finlayson* v. *Waller* (1943) 64 Idaho 618 [134 P.2d 1069]; but see *Mayes* v. *Coleman* (1916) 110 Miss. 874 [71 So.14]; see generally Annotation (1957) 55 A.L.R.2d 1119.

Although the holding of *Fisk* was largely predicated upon the "secrecy" of the unrecorded vendor's lien (41 N.Y. (2 Keys) at pp. 69, 73-74), the above cited cases and treatises do not always rely on that element as dispositive. Rather, they sometimes state the rule, as *Fisk* itself does also (*id.* at p. 75), in terms of the law's preference for legal liens such as the purchase-money mortgage or deed of trust over purely equitable liens such as the vendor's lien, even where the equities between the parties are otherwise equal (as presumably they would be where each party had notice of the other's simultaneously arising lien). (See, e.g., *Campbell* v. *Sidwell, supra*, 55 N.E. at p. 611; 4 Pomeroy, *op. cit. supra*, § 1253a, p. 751, fn. 6.)

Even after California adopted the vendor's lien by statute in the 1872 Civil Code, the courts described it as essentially an equitable lien, in keeping with the rule of construction that statutes which codify existing common law should be viewed as a continuation thereof. (§ 5.) Thus, in *Avery, supra,* 87 Cal. 619, the court stated: "A vendor's lien is not the result of any agreement or any intention of the vendor and vendee, but is a simple equity raised by courts for the benefit of the vendor of real estate." (*Id.* at p. 623.) Similarly, the court stated in *Finnell, supra,* 156 Cal. 589: "Whatever may be said against the policy of allowing such a secret lien [as the vendor's lien] . . . , our [L]egislature has seen fit to look with favor upon it and to continue in force the old equity rules in regard thereto. . . . [T]he principle upon which such a lien rests has been held to be that one who gets the estate of another ought not in conscience to be allowed to keep it without paying the consideration." (*Id.* at p. 594; see also *Brown, supra,* 98 Cal.App.3d at pp. 850-851, and cases there cited.)

Given that (1) under the common law the vendor's lien, as a purely equitable lien, was deemed subordinate to the legal purchase-money mortgage or deed of trust where both liens arose simultaneously (*Fisk, supra,* 41 N.Y. (2 Keyes) at pp. 74-75; 4 Pomeroy, *op. cit. supra*, § 1253a, p. 751, fn. 6; 2 Jones, *op. cit. supra*, § 1080, p. 32), and (2) the California courts, in construing the statutes codifying the common law of liens, have treated the vendor's lien as an equitable lien notwithstanding its present basis in statute,

it follows that the common law principle of granting priority to the purchase-money lien over the vendor's lien still controls.

Our conclusion is marginally bolstered by the only foreign case directly on point: *Johnson* v. *Fugate* (Okla. 1956) 293 P.2d 559 [55 A.L.R.2d 1115]. In that case, on facts essentially similar to those herein, the Oklahoma Supreme Court cited the Oklahoma statutes on purchase-money liens and vendor's liens, which are essentially the same as the California statutes,[6] and concluded that the purchase-money mortgage had priority. (*Id.* at p. 561.) However, the court engaged in no analysis and cited no authority other than the statutes; its curt holding stated only that the vendor's position was "wholly without merit." (*Ibid.*) It does not even clearly appear from the holding whether the court deemed its result compelled by statute or by equity. Accordingly, *Johnson* carries little persuasive weight, and we do not fault the trial court for disregarding it.

Finally, we are wary of making the priority of the vendor's lien depend upon whether the holder of a deed of trust had notice or knowledge of the vendor's lien. Such a rule would provoke disputes (such as this one) and much litigation over the extent of the parties' knowledge or notice of transactions giving rise to a vendor's lien.

We therefore conclude that the lien created by First South's purchase money deed of trust has priority over Brock's vendor's lien.

### DISPOSITION

The judgment is reversed. First South shall recover its costs on appeal.

Davis, J., and Nicholson, J., concurred.

A petition for a rehearing was denied August 24, 1992, and respondents' petition for review by the Supreme Court was denied October 22, 1992.

---

[6]Oklahoma Statutes Annotated title 42, section 16 (West 1990) provides: "A mortgage given for the price of real property, at the time of its conveyance, has priority over all other liens created against the purchaser, subject to the operation of the recording laws." Section 26 provides: "One who sells real property has a special or vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured, otherwise than by the personal obligation of the buyer, subject to the rights of purchasers and encumbrancers, in good faith, without notice."