Filed 2/13/14  Johnson v. Deutsche Bank National Trust CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAL JOHNSON, | B247252 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC383217) |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Malcolm H. Mackey, Judge.  Reversed.

Greenberg Glusker Fields Claman & Machtinger, Ricardo P. Cestero for Plaintiff and Appellant.

Chuck Birkett Tsoong, Stephen S. Chuck, Tiffany M. Birkett, Victoria J. Tsoong for Defendant and Respondent.

_____

This is the second appeal in this case. Previously, we reversed in part a judgment following demurrer, finding that plaintiff Michal Johnson alleged adequate cancellation and quiet title claims against defendant Deutsche Bank National Trust Company (Deutsche Bank).

This appeal comes to us after the trial court entered summary judgment in favor of Deutsche Bank. The trial court determined that Johnson had no claim to the property on which he resided because he willingly transferred title to another party, and that Deutsche Bank was a bona fide encumbrancer. We find that both of these determinations involve questions of fact that were not appropriate for resolution on summary judgment. Accordingly, we reverse.

## Factual Background

Johnson and his family have lived in a property in Los Angeles for over 30 years. In 1997, a grant deed was recorded reflecting a transfer of the property title from Johnson's aunt to Johnson. Johnson refinanced the mortgage a number of times, fell behind on payments, and declared bankruptcy in 2003. Johnson refinanced the property again in 2003 and soon after missed more mortgage payments.

In July 2004, Johnson was approached at his home by a representative for a company called Buyers Market Realty Services Corp. (BMRSC), who told Johnson that the property was in foreclosure and that BMRSC could help him save it. Unbeknownst to Johnson, BMRSC was owned by Timothy Barnett, a convicted ex-felon who had spent years in prison for real estate fraud.[1] Johnson went to the BMRSC offices and met with Barnett, who told him that BMRSC could help refinance the property and clean up his credit. At the meeting, Barnett instructed Johnson to sign a package of papers that Barnett described as loan documents necessary for the refinance. The documents seemed similar to papers that Johnson had signed in connection with prior refinances.

---

[1] Barnett was again convicted for real estate-related fraud in 2012 and sentenced to 25 years to life in prison.

Johnson met with Barnett and his colleagues on further occasions. Barnett told Johnson that, because of his poor credit, he would have to be taken off the title to the house for one month, but that he would be placed back on the title as a soon as he made his first monthly payment of $1,200 to BMRSC. At the time, according to Johnson, he did not know what the term "title" meant. Barnett assured Johnson that he would not lose ownership of the house, that no one but Johnson would be able to transfer any interest in the property, and that no one, including BMRSC, would be able to borrow money against the house.

On July 27, 2004, Johnson received and signed a "participation agreement." The agreement provided that a grant deed to the property would be provided to Johnson after approximately a month-long period, that Johnson was to remain on the title after "completion of investment period," and that BMRSC could not "encumber, sale [*sic*] or otherwise conduct any transactions with the property" without Johnson's written consent. At some point, a second "participation agreement" was created that did not have these beneficial terms. According to Johnson, the signature on the second agreement appears to be a forgery.

During their meetings, Barnett instructed Johnson to sign a number of additional documents, telling Johnson they were necessary for the refinance, even though some of the papers were blank. Johnson signed the documents, often not reading or understanding them. Among them was a grant deed transferring Johnson's property to BMRSC, reflecting a property value of $179,000. According to Johnson, throughout the entire process he believed he would remain the only owner of the property.

Two days after the grant deed was executed, without Johnson's knowledge, a company called Buyer's Market Real Estate Services Incorporated (BMRESI) purported to execute a grant deed transferring title in the property from BMRESI to Sean Gallaher, an associate of Barnett's. Gallaher soon after obtained loans totaling $332,500 from Provident Savings Bank, F.S.B. (Provident), using the property as security. Then, in approximately January 2006, Gallaher refinanced the Provident loan with Impac Funding Corporation (Impac), secured by a $384,000 deed of trust against the property.

Unaware of these occurrences, Johnson believed that BMRSC was still the mortgage refinancer, and he continued for almost three years to make $1,200 monthly payments to BMRSC. In June 2007, Johnson met Gallaher when Gallaher came to the property for purposes of securing insurance. Gallaher said that he was the owner of the property. Johnson offered to make his June 2007 payment to Gallaher, but Gallaher told him to hold onto the payment. Shortly thereafter, however, Gallaher asked Johnson to give him the payments for August and September 2007, and Johnson paid him in cash. Johnson stopped making any payments when his wife read a September 2007 newspaper article identifying Barnett as a real estate con artist. On January 9, 2008, Johnson recorded a lis pendens against the property.

In February 2008, an assignment was recorded reflecting the transfer of the Impac deed of trust and underlying note from Impac to IndyMacBank F.S.B. The $384,000 loan was acquired and securitized in a mortgage pool. Deutsche Bank is the trustee for the GSR Mortgage Loan Trust 2006-0A1, and Deutsche Bank apparently asserts that the $384,000 loan was assigned to Deutsche Bank as trustee of the GSR trust. However, the evidence presented on summary judgment does not indicate whether or when the $384,000 loan was assigned to Deutsche Bank.

**Procedural Background**

Johnson filed suit in January 2008 against various defendants (including Barnett, Gallaher, BMRSC, Provident, and Impac) seeking, among other things, cancellation of the grant deed to BMRSC and all subsequent deeds and encumbrances, as well as quiet title. Deutsche Bank was added as a defendant in the operative third amended complaint, filed in July 2009. Johnson again pleaded, among other things, cancellation and quiet title causes of action. Deutsche Bank filed a demurrer, which was sustained without leave to amend. In an unpublished opinion filed August 23, 2011, *Johnson v. Deutsche Bank National Trust Company* (B223188), we reversed the trial court's order dismissing Deutsche Bank, finding that Johnson adequately alleged quiet title and cancellation claims.

4

After the matter was remanded, Deutsche Bank filed a cross-complaint against Johnson for equitable subrogation and unjust enrichment.

In August 2012, Deutsche Bank filed a motion for summary judgment. It argued that Johnson knowingly and intentionally transferred title out of his own name when dealing with BMRSC, and that Deutsche Bank was not responsible for Johnson's failure to understand the terms of the documents he signed. It further argued that even if the transfer was voidable, Deutsche Bank was a good faith encumbrancer and was not subject to Johnson's claim. It also contended that Johnson ratified the transfers by continuing to make mortgage payments, and that Johnson had unclean hands because he agreed to transfer title to Barnett in order to obtain more favorable loan terms.

Johnson opposed the motion for summary judgment. His opposition papers included a responsive separate statement that took issue with a number of Deutsche Bank's purported undisputed material facts, and which set forth additional material facts that weighed against summary judgment. Deutsche Bank did not respond to Johnson's additional material facts.

The trial court ruled in favor of Deutsche Bank. At the hearing, the court appeared to base its decision on the language of the participation agreement and similar documents stating that Johnson agreed to convey title to BMRSC. The court then entered a proposed order that had previously been submitted by Deutsche Bank, signing the order without alteration despite the fact that the proposed order contained contingent language to account for Deutsche Bank's alternative requests for either summary judgment or summary adjudication.

Thereafter, the trial court entered judgment in Deutsche Bank's favor. The judgment stated that summary judgment was proper because: "It is undisputed that plaintiff Johnson knowingly transferred title to the subject property as part of his transaction with defendant Barnett, and further that moving defendant Deutsche Bank was a bona fide encumbrancer." The judgment also stated that Deutsche Bank's cross-complaint was rendered moot.

Johnson timely appealed.

## DISCUSSION

Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. A defendant meets its burden on summary judgment by showing that one or more elements of the plaintiff's causes of action cannot be proven, or by establishing a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2).) The burden then shifts to the plaintiff to show a triable issue of fact material to the causes of action or defense. (*Ibid.*) We evaluate a summary judgment ruling de novo,[2] independently reviewing the record to determine whether there are any triable issues of material fact. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) "In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1258.) In general, we give no deference to the trial court's ruling or reasoning, and only decide whether the right result was reached. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

Deutsche Bank asserts that summary judgment was warranted because the evidence establishes that Johnson voluntarily transferred his interest in the property in order to avoid foreclosure and to refinance the property. Deutsche Bank characterizes Johnson's statements that he did not know he was transferring his ownership in the property as "patently false." It also argues that Johnson's deposition testimony was unconvincing when he stated that he did not sign the second version of the participation agreement (the version that did not protect him from unapproved transfers). Moreover,

---

[2]    Deutsche Bank contends that, because Johnson's claims are equitable, we should review the trial court's ruling under an abuse of discretion standard. This assertion is incorrect. The circumstances under which a summary judgment ruling is analyzed for abuse of discretion are rare. (*Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 212.) When the issue is whether the moving party has established facts that negate a plaintiff's claim—as it is here—then our analysis is de novo. (*Ibid.*)

according to Deutsche Bank, Johnson ratified the transfer to BMRSC and subsequent transfers. This is because "[i]t seems evident that Johnson was cognizant of his voluntary transfer, and had no concerns about making the payment to Gallaher given that he had avoided foreclosure by his complicity with Barnett and his cohorts."

The tenor of these arguments demonstrates the error of granting summary judgment on the record presented. In deciding a summary judgment motion, the court analyzes the evidence "including all reasonable inferences supported by that evidence, in the light most favorable to the nonmoving party." (*Garcia v. W&W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1041.) Deutsche Bank asks us to make inferences—indeed, to determine questions of fact—in *its* favor, as the moving party. This is clearly an inappropriate approach to summary judgment. (See *Shin v. Ahn* (2007) 42 Cal.4th 482, 488 [summary judgment denied when material questions of fact remain].)

Much of the law pertinent to our decision on the prior appeal also applies to this appeal. "A deed is void if the grantor's signature is forged or if the grantor is unaware of the nature of what he or she is signing." (*Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, 378.) Such a deed is void *ab initio* and cannot be made the foundation of a good title, even by a bona fide encumbrancer. (*Bryce v. O'Brien* (1936) 5 Cal.2d 615, 616; *Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 43.) A deed is voidable (rather than void *ab initio*) when the grantor is aware of what he or she is executing, but has been induced to do so by fraudulent misrepresentation or undue influence. (*Schiavon*, at p. 378.) A good faith encrumbrancer—i.e., one who takes its interest in the real property for value, free and clear of unrecorded interests, and without knowledge or notice of competing liens—is not subject to a competing claim on a deed that remains voidable. (*First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1440; *Brock v. First South Savings Assn.* (1992) 8 Cal.App.4th 661, 667.)

At a minimum, contrary to the trial court's ruling, material questions of fact remain as to whether the transfer from Johnson to BMRSC was voidable. The mere fact that Johnson may have understood he was transferring title is not dispositive. "If a

7

grantor is aware that the instrument he is executing is a deed and that it will convey his title, but is induced to sign and deliver by fraudulent misrepresentations or undue influence, the deed is voidable . . . ." (*Fallon v. Triangle Management Services, Inc.* (1985) 169 Cal.App.3d 1103, 1106.)  Johnson presented evidence tending to show that he was induced by fraudulent misrepresentations to sign and deliver the BMRSC documents, including the grant deed.  This evidence included Barnett's oral representations that Johnson would not lose ownership of the house, that no one but Johnson would be able to transfer any interest in the property, and that no one would be able to borrow money against the house.[3]  It also included the written participation agreement signed by Johnson, which contained similar representations.  The issue of whether Johnson actually was induced to convey title by fraudulent misrepresentations is one to be decided by the trier of fact at trial.

Moreover, Deutsche Bank failed to establish that it was a bona fide encumbrancer. On appeal, Deutsche Bank makes no real attempt to argue the issue; it primarily asserts that the issue is immaterial because Johnson voluntarily transferred title.

In any event, and contrary to the trial court's ruling, Johnson raised numerous issues of material fact that bear upon whether Deutsche Bank was a bona fide encumbrancer.  These issues include whether Deutsche Bank obtained its interest in the subject deed of trust prior to Johnson's recording of the lis pendens, and whether there were sufficient discrepancies in the chain of title (including the transfer from BMRESI to Gallaher immediately following the transfer from Johnson to BMRSC[4]) to put Deutsche

---

[3]    Deutsche Bank's argument that we should overlook Barnett's alleged oral statements because they were contrary to the documents signed by Johnson is undermined by the Supreme Court's holding in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1172, which reaffirmed an exception to the parol evidence rule that "allows a party to present extrinsic evidence to show that the agreement was tainted by fraud."

[4]    Deutsche Bank's argument that this was "likely a scrivener's error" is, first, an issue not properly decided on summary judgment and, second, not evident from the record.  Deutsche Bank points out that the same Barnettt associate, David Myles, signed

8

Bank on notice. "[A] 'good faith' encumbrancer is one who acts without knowledge or notice of competing liens on the subject property." (*Brock v. First South Savings Assn.* (1992) 8 Cal.App.4th 661, 667 [original italics omitted].) Either actual or constructive notice can defeat bona fide status. (*612 South LLC v. Laconic Limited Partnership* (2010) 184 Cal.App.4th 1270, 1278.) The issue of whether a party is a bona fide encumbrancer is generally a question of fact. (*Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 536.) In this case, at trial, if the grant deed is determined to be voidable, the trier of fact will need to determine whether Deutsche Bank was a bona fide encumbrancer.

## DISPOSITION

The judgment is reversed. Johnson is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

---

both grant deeds. But Myles executed the grant deed on behalf of BMRSC as "vice president" and on behalf of BMRESI as "president." If anything, this tends to show that BMRSC and BMRESI were different companies.