Opinion
 

 ZEBROWSKI, J.
 

 —This case concerns a question of priority between two deeds of trust held by different lenders. Both deeds of trust encumber the same parcel of commercial real property. The deed of trust that was first in time was recorded, but was later mistakenly reconveyed. The deed of trust that was second in time was also recorded, but not until after the first had been reconveyed. The deed of trust that was second in time thus became first of record. The party that recorded the second deed of trust had knowledge that the first deed of trust had been recorded and also that it had been reconveyed, but no knowledge that the reconveyance was an error. The question is whether the party that recorded the second deed of trust should have investigated more than it did. We will find that the investigation undertaken in this case was adequate. We will therefore hold that the deed that is first of record, even though second in time, has priority.
 

 
 *1436
 
 Factual and Procedural Summary
 

 This case was decided by summary judgment. The respective separate statements filed by the parties together with the supporting evidence show no dispute over the determinative facts.
 
 [1]
 
 The two lenders are First Fidelity Thrift & Loan Association (First Fidelity) and Alliance Bank (Alliance).
 

 1.
 
 First Fidelity’s loan; reconveyance of First Fidelity’s deed of trust.
 

 The owner of the commercial property in question (the borrower) first obtained a loan from First Fidelity. The deed of trust which secured First Fidelity’s loan initially encumbered two different properties: the borrower’s commercial property and also his home. The loan agreement provided that the borrower would make a capital reduction payment against the loan, and that when he did, First Fidelity would reconvey the encumbrance on the borrower’s home by recording a partial reconveyance. The original agreement thus contemplated that the encumbrance created by the deed of trust would remain of record against the commercial property, but would be released as to the home, after the capital reduction payment.
 

 The borrower made the capital reduction payment as planned. When he did, First Fidelity instructed the trustee of the deed of trust to record a partial reconveyance. However, First Fidelity instructed the trustee to reconvey the commercial property, not the home. (First Fidelity’s instructions contained the legal description of the commercial property, rather than the legal description of the home; apparently this was a clerical error.) The trustee followed First Fidelity’s instructions as given, and hence recorded a reconveyance of the commercial property, not the home. After this partial reconveyance, the public land title records showed the commercial property as unencumbered.
 

 2.
 
 The Alliance loan application; the loan from the nonparty bank.
 

 Four months after the borrower made his capital reduction payment and First Fidelity mistakenly reconveyed its deed of trust on the commercial property, the borrower applied to Alliance for a loan. In a self-prepared personal financial statement which accompanied his application, the borrower scheduled several parcels of real estate owned, and noted encumbrances against these properties. One was the commercial property now in question. The financial statement noted an encumbrance against this property in favor of First Fidelity. This was no longer consistent with the land title records, since First Fidelity’s deed of trust had been reconveyed.
 

 
 *1437
 
 Two months later, while the borrower’s loan application to Alliance was still being processed, the borrower obtained a loan from a third bank (the nonparty bank). The nonparty bank’s loan was secured by a deed of trust against the same commercial property. The state of record title then reflected a deed of trust against the commercial property securing the loan from the nonparty bank, but no encumbrance in favor of First Fidelity (because it had been reconveyed).
 

 3.
 
 Alliance reviews title report, makes inquiries, funds loan, does not call First Fidelity.
 

 Prior to funding its loan, Alliance’s loan officer reviewed a preliminary and a supplemental title report showing only the nonparty bank’s deed of trust. The title report thus revealed a discrepancy between the financial statement in the borrower’s loan application (which noted an encumbrance against the property in favor of First Fidelity) and the official land title records (which showed only a deed of trust in favor of the nonparty bank). When Alliance’s loan officer first discussed this discrepancy with the borrower, the borrower told Alliance that he had “refinanced” and that one of his properties—either his home or his commercial property (he was not sure which)—had been “released.” In a subsequent telephone conversation, the borrower advised Alliance that his financial statement was in error, and that the deed of trust in favor of First Fidelity encumbered only his home (which was consistent with the official land title records).
 
 [2]
 

 The Alliance loan officer understood that the nonparty bank, which then held the first deed of trust of record against the commercial property, “was servicing [the borrower’s] primary banking needs and had done so for approximately the prior three years.” The loan officer telephoned the non-party bank seeking further clarification. The nonparty bank advised that the
 
 *1438
 
 loan from First Fidelity against the commercial property had been repaid.
 
 [3]
 
 In a second conversation, the nonparty bank further advised that First Fidelity held a deed of trust only against the borrower’s home (which was also consistent with the official land title records).
 

 Alliance then funded its own loan to the borrower, and secured it by a second deed of trust on the commercial property, junior only to the first deed of trust in favor of the nonparty bank. Although First Fidelity appears to suggest that Alliance would have funded its loan even if it had knowingly been in third position, behind deeds of trust in favor of both First Fidelity and the nonparty bank, there is no evidence to support this assertion, and Alliance denies it. The evidence shows only that Alliance’s loan approval committee considered and approved a loan to be secured by a second deed of trust junior only to that of the nonparty bank.
 

 Alliance never contacted First Fidelity directly. It is this omission that fuels this lawsuit. First Fidelity contends in its brief that “A simple phone call to First Fidelity would have disclosed the existence and validity of First Fidelity’s lien.” However, the record contains no evidence to support this assertion, and it is instead in the realm of speculation. There is no evidence, for example, of any standard practice or policy for directing or handling such inquiries, or whether First Fidelity would have been willing to offer such information at all. Whether such a call would, with reasonable dispatch, have been directed to someone with knowledge or a requirement to investigate is not known. Whether such a call would have caused First Fidelity to reexamine the underlying documentation and to discover the error in its earlier reconveyance instructions is not known. First Fidelity might simply have confirmed that it had indeed ordered reconveyance of its encumbrance against the commercial property, as its records did in fact reflect. Alternatively, in view of the possibility of subsequent claims of slander of title, detrimental reliance, interference with prospective economic advantage, etc., which could potentially be based on whatever First Fidelity might say about the borrower’s property, First Fidelity might have followed a policy of directing such inquiries to the state of record title. Several possibilities are apparent, and what might actually have happened if Alliance had inquired of First Fidelity remains unknown. However, it does appear that this litigation would not have ensued had this phone call been made, and the lack of the call forms the major issue in this case.
 

 
 *1439
 
 4.
 
 Alliance obtains further evidence of the state of title, makes another advance on its deed of trust.
 

 About six months after Alliance funded its loan, the borrower requested an increase. Alliance then sought a property profile on the commercial property, and obtained a copy of First Fidelity’s deed of trust and a copy of the partial reconveyance by which that deed of trust had been reconveyed. An increase in the loan was then approved and funded, and Alliance recorded a declaration of additional advance referencing Alliance’s previously recorded deed of trust.
 

 5.
 
 First Fidelity discovers its error; First Fidelity sues the borrower.
 

 Almost two years after Alliance initially funded its loan, First Fidelity discovered that it had mistakenly reconveyed its deed of trust against the commercial property. First Fidelity then filed suit against the borrower seeking reinstatement of that encumbrance, and recorded a lis pendens. First Fidelity did not, however, name Alliance in this suit. First Fidelity eventually obtained a judgment against the borrower which reinstated First Fidelity’s deed of trust against the commercial property as of the date on which First Fidelity had recorded its lis pendens. This date was of course long after the recordation of Alliance’s deed of trust. First Fidelity thus regained a deed of trust against the commercial property but, insofar as the official land title records showed, that deed of trust was junior in time to Alliance’s deed of trust.
 

 6.
 
 The foreclosure and injunction proceedings.
 

 At some point the nonparty bank was apparently repaid and left the scene. Alliance’s deed of trust then became the earliest deed of trust recorded but not reconveyed, and First Fidelity’s deed of trust reinstated as of the date of its lis pendens became the second earliest. Both loans then went into default, and both lenders instituted foreclosure proceedings. Alliance’s proceedings were apparently begun first, but First Fidelity claimed that Alliance’s foreclosure company had failed to give proper notice to First Fidelity as a junior lienholder. Alliance thus chose to reinstitute new foreclosure proceedings, which had the effect of enabling First Fidelity to foreclose first. First Fidelity purchased the property at the foreclosure sale and thus became the holder of record title.
 

 First Fidelity then obtained an injunction against Alliance’s foreclosure from the writs and receivers department of the Los Angeles Superior Court. The case was then transferred to the “fast track” department with the injunction in place.
 

 
 *1440
 
 7.
 
 The summary judgment motions.
 

 First Fidelity and Alliance then both filed motions for summary judgment. First Fidelity conceded that there was no evidence that Alliance literally had actual knowledge that First Fidelity’s reconveyance was a mistake. First Fidelity contended, however, that whether or not Alliance had literal actual knowledge was irrelevant. First Fidelity contended that because Alliance had once been told that First Fidelity had an encumbrance, and even though Alliance learned that this encumbrance had been released, Alliance had a duty to investigate the manner in which that encumbrance had been released and to determine whether First Fidelity had released the encumbrance in error. Although Alliance did make an effort to resolve the discrepancy between the borrower’s initial loan application and the state of record title, primarily by conferring with the borrower and with the nonparty bank that Alliance understood to be the borrower’s primary bank, First Fidelity contended that these efforts were inadequate. First Fidelity thus contended that Alliance was not a bona fide encumbrancer, and that First Fidelity’s encumbrance was therefore senior.
 

 Alliance contended that it had no actual notice of any outstanding interest held by First Fidelity and that it had no duty to investigate any more than it did.
 
 [4]
 

 8.
 
 The rulings on the summary judgment motions.
 

 The trial court denied First Fidelity’s motion and granted Alliance’s motion. In granting summary judgment for Alliance, the trial court stated: “I’m not inclined to impose upon this recording statute some due diligence obligation in the absence of some case holding that there is such a duty, some duty to investigate. ...[¶] don’t think that as a matter of policy I should go about imposing upon lenders some sort of due diligence requirement in this type of situation. It does not seem to me that imposing such a requirement facilitates the making of loans.” Judgment was entered for Alliance and First Fidelity appeals.
 

 Discussion
 

 1.
 
 A good faith encumbrancer takes clear of unknown liens.
 

 A good faith encumbrancer for value who first records takes its interest in the real property free and clear of unrecorded interests. (Civ.
 
 *1441
 
 Code, §§ 1107, 1214; 3 Miller & Starr, Cal. Real Estate (2d ed. 1989) Recording and Priorities, §§ 8:2, 8:3, pp. 270, 273 [unrecorded instrument not enforceable against subsequent bona fide purchaser who first records].) “An encumbrancer in good faith and for value means a person who has taken or purchased a lien, or perhaps merely the means of obtaining one, and who has parted with something of value in consideration thereof.
 
 (Fulkerson
 
 v.
 
 Stiles
 
 (1909) 156 Cal. 703, 706 [105 P. 966].) ... [A]
 
 ‘good faith'
 
 encumbrancer is one who acts
 
 without knowledge or notice
 
 of competing liens on the subject property. (See, e.g.,
 
 Combination Land Co.
 
 v.
 
 Morgan
 
 (1892) 95 Cal. 548, 552 [30 P. 1102];
 
 Brown
 
 v.
 
 Johnson
 
 (1979) 98 Cal.App.3d 844, 851 [159 Cal.Rptr. 675];
 
 Schut
 
 v.
 
 Doyle
 
 (1959) 168 Cal.App.2d 698, 702-703 [336 P.2d 567]; 3 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 8:38, p. 346; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 209, p. 412.)”
 
 (Brock v. First South Savings Assn.
 
 (1992) 8 Cal.App.4th 661, 667 [10 Cal.Rptr.2d 700].) If a trustee executes an unauthorized reconveyance and the trustor subsequently conveys the property, a grantee
 
 who does not have notice
 
 of the trustee’s lack of authority receives title free and clear of the lien.
 
 (Firato
 
 v.
 
 Tuttle
 
 (1957) 48 Cal.2d 136, 139 [308 P.2d 333].) Similarly, a junior lender has the right to rely on a state of record title which indicates that a senior lien will be satisfied out of the interests of all signatories to a senior promissory note. A secret agreement that the senior lien will be satisfied out of the interests of only some of the signatories is not binding upon the junior encumbrancer.
 
 (Caito
 
 v.
 
 United California Bank
 
 (1978) 20 Cal.3d 694, 702 [144 Cal.Rptr. 751, 576 P.2d 466]; but see
 
 Wutzke
 
 v.
 
 Bill Reid Painting Service, Inc.
 
 (1984) 151 Cal.App.3d 36, 39 [198 Cal.Rptr. 418] [bona fide purchaser’s interest not senior to that of holder of deed of trust whose deed was reconveyed by forgery]; see also 3 Miller & Starr,
 
 supra,
 
 § 8:10, p. 297 [bona fide purchaser could, however, be protected by title insurance].)
 

 2.
 
 The burden on summary judgment.
 

 First Fidelity’s complaint pleaded that First Fidelity had “inadvertently and through clerical error” reconveyed its deed of trust, and that thereafter Alliance had recorded its deed. The pleadings thus showed that it was Alliance that held the legal claim, while First Fidelity’s claim was an equitable claim to reinstatement of a previously extinguished lien.
 
 (Siegel
 
 v.
 
 American Savings & Loan Assn.
 
 (1989) 210 Cal.App.3d 953, 957 [258 Cal.Rptr. 746] [“Recordation of the deed of reconveyance extinguishes the lien on the property created by the deed of trust.”].) The question on summary judgment therefore did not involve the scenario most commonly encountered in the cases—the effect of an existing, but unrecorded, lien. Instead, the question concerned whether, at the time Alliance funded its loan,
 
 *1442
 
 Alliance had notice of First Fidelity’s equitable claim that its extinguished lien ought to be reinstated. Assuming that notice of a claim that a reconveyed deed of trust ought to be reinstated is sufficient to preclude good faith encumbrancer status (see, e.g., 3 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 Recording and Priorities, § 8:86, p. 431 [unrecorded equitable lien generally enforceable against grantee who is not a bona fide purchaser]), the question is whether the trial court was presented with a triable issue of fact regarding whether Alliance had notice of such a claim.
 

 A defendant is entitled to summary judgment if that defendant’s moving papers show that an element of plaintiff’s case cannot be established. (Code Civ. Proc., § 437c, subd. (o)(2); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial 3 (The Rutter Group 1997) ¶ 10:240 et seq., p. 10-77 et seq.) That Alliance had knowledge of First Fidelity’s equitable claim for reinstatement of its reconveyed deed of trust was an element of First Fidelity’s case. “The general rule places the burden of proof upon a person claiming bona fide purchaser status to present evidence that he or she acquired interest in the property without notice of the prior interest.
 
 (Bell
 
 v.
 
 Pleasant
 
 (1904) 145 Cal. 410, 413-414 [78 P. 957];
 
 Alcorn
 
 v.
 
 Buschke
 
 (1901) 133 Cal. 655, 657-658 [66 P. 15];
 
 Hodges
 
 v.
 
 Lochhead
 
 (1963) 217 Cal.App.2d 199, 203 [31 Cal.Rptr. 879]; 2 Miller & Starr, Current Law of Cal. Real Estate [(1977)] § 11:28, p. 51.) . . . [¶] If the prior party claims an equitable rather than a legal title, however, the burden of proof is upon the person asserting that title.
 
 (Bell
 
 v.
 
 Pleasant, supra,
 
 145 Cal. 410, 414-415;
 
 Garber
 
 v.
 
 Gianella
 
 (1893) 98 Cal. 527, 529-530 [33 P. 458]; 2 Miller & Starr, Current Law of Cal. Real Estate,
 
 supra,
 
 § 11:28, pp. 52-53.)”
 
 (Gates Rubber Co.
 
 v.
 
 Ulman
 
 (1989) 214 Cal.App.3d 356, 366, fn. 6 [262 Cal.Rptr. 630].) Showing that Alliance was not an innocent purchaser for value was hence an element of First Fidelity’s claim.
 
 (Firato
 
 v.
 
 Tuttle, supra,
 
 48 Cal.2d 136, 138.)
 

 In its moving summary judgment papers, Alliance presented evidence that it had no knowledge that First Fidelity had a claim (i.e. no knowledge that First Fidelity had reconveyed in error). The burden on summary judgment thus shifted to First Fidelity to present evidence showing a triable issue of fact that Alliance did have notice of First Fidelity’s claim. (Code Civ. Proc., § 437c, subd. (o)(2).) First Fidelity attempted to meet this burden by presenting evidence of two facts: 1) that the borrower had initially listed a First Fidelity encumbrance against the commercial property on his financial statement, and 2) that Alliance had not telephoned First Fidelity to inquire. The question thus resolves into whether evidence of these two facts, viewed in light of the evidence that First Fidelity’s deed of trust had been reconveyed, would be sufficient to support a finding of “notice” of First Fidelity’s continuing equitable claim within the meaning of the recording statutes.
 

 
 *1443
 
 3.
 
 The duty to inquire.
 

 Civil Code section 1217 provides: “An unrecorded instrument is valid as between the parties thereto
 
 and those who have notice thereof.”
 
 (Italics added.) Assuming that First Fidelity’s deed of trust qualifies as an “unrecorded” instrument, even though it was actually “recorded but reconveyed,” Alliance would be subject to it if Alliance had “notice” within the meaning of section 1217. (See, e.g., 3 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 Recording and Priorities, §§ 8:2, 8:80, pp. 270, 415.) A person generally has “notice” of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact. (See, e.g., 3 Miller & Starr,
 
 supra,
 
 § 8:45, p. 355; Civ. Code, § 19.)
 

 4.
 
 March v. Pantaleo and this case.
 

 March
 
 v.
 
 Pantaleo
 
 (1935) 4 Cal.2d 242 [48 P.2d 29] is closely, although not precisely, analogous. In
 
 March,
 
 a ranch owner borrowed money from “Mr. March, the barber.” The barber secured the loan by a recorded deed of trust on the ranch. The ranch owner repaid the loan, and the barber reconveyed the deed of trust. The owner then obtained a second loan from the barber, and gave the barber a second deed of trust on the same ranch. The barber did not record the second deed of trust. About a year later, the ranch owner was charged with a criminal offense and sought to retain defense counsel. As attorney’s fees, the ranch owner offered to deed the ranch to the attorney. The attorney inquired whether the owner had “borrowed” any money or “owed” any money on the ranch. The owner responded by stating that he had borrowed money from “Mr. March, the barber”, but “when” he did not “know exactly.” The attorney simply told the ranch owner “never mind that,” and stated that he “would look it up in the records.” The attorney did search the records, and found only the first deed of trust, which had been reconveyed. The attorney concluded that title to the ranch was “clear,” and took a deed to the ranch in payment. The opinion in
 
 March
 
 contains no mention that the attorney contacted the barber directly. Nor does the opinion in
 
 March
 
 suggest that the attorney inquired further of the ranch owner.
 
 [5]
 
 Shortly after the attorney’s deed was recorded, the barber recorded his deed of trust. The attorney later sold the ranch to the defendant, and the barber filed a quiet title action seeking to establish the priority of his deed of trust. The trial court ruled for defendant, and the barber appealed.
 

 The Supreme Court stated that “[t]he deed of trust to plaintiff [the barber] was prior in time, and would be prior in right save for the failure to record
 
 *1444
 
 it. It is conceded that the deed to [the attorney] was first recorded, and that at the time of said recordation, no prior conveyance or encumbrance appeared of record. But [the attorney’s] right is superior to plaintiff’s only if [the attorney] is a
 
 bona fide
 
 purchaser, for the recording acts protect the subsequent purchaser who gives value before he has any notice, actual or constructive, of prior equities. [Citations.] The question is, therefore, whether [the attorney] had either actual notice of plaintiff’s prior claim, or constructive notice thereof by reason of facts sufficient to put him on inquiry, before he gave value, that is, before his law firm undertook the obligation to defend [the ranch owner]. If he had none, then his title is good as against plaintiff, and defendant. . . , his transferee, will likewise take a title superior to that of plaintiff . . .
 
 (March
 
 v.
 
 Pantaleo, supra,
 
 4 Cal.2d 242, 243-244.) The Supreme Court went on to rule that in view of the fact that the attorney had been told about only one prior lender, and had checked the land title records to determine that an encumbrance in favor of that lender had been reconveyed, no further inquiries were necessary. The judgment in favor of defendant was thus affirmed.
 

 Although the instant case is not identical, it is similar in significant respects. Here the borrower advised Alliance of only one encumbrance on the commercial property, purportedly in favor of First Fidelity. Upon obtaining a title report, Alliance learned that First Fidelity had no encumbrance on the commercial property, but instead that the nonparty bank did. Upon inquiring further of the borrower and the nonparty bank, Alliance was told that First Fidelity held an encumbrance against the borrower’s home, a property with which Alliance was not concerned, but that the loan against the commercial property had been repaid. It was a reasonable deduction from this information that First Fidelity’s deed of trust against the commercial property had been reconveyed, which in fact was correct. No evidence was presented to the effect that Alliance had reason to suspect that the unusual had occurred: that First Fidelity had reconveyed by mistake.
 

 Just as the attorney knew the identity of the barber in
 
 March,
 
 the subsequent encumbrancer here (Alliance) had notice of the identity of the prior lender (First Fidelity).
 
 March
 
 imposed no duty on the subsequent encumbrancer to contact the prior lender after learning that the prior deed of trust had been reconveyed. Perhaps, from a standpoint of good business practice, it might have been advisable for Alliance to contact First Fidelity here, since whatever First Fidelity’s response—whether to discover its error, to simply confirm the reconveyance, or to decline to provide information—it would likely have obviated this litigation, either by way of estoppel or by dissuading Alliance from making its loan. As a legal matter, however, there is no authority for the proposition that a prospective lender, learning that a prior
 
 *1445
 
 deed of trust had been reconveyed, has a duty to investigate further to determine whether that reconveyance was in error. No California case has ever so held, and no such case has been found from any other jurisdiction. If such a rule had been applied in
 
 March,
 
 the unrecorded deed of trust would presumably have been discovered. In view of the fact that most parcels of real estate have likely been subject to a lien that has been reconveyed, a broad rule would seriously complicate the lending process far beyond anything which seems contemplated by the statutes by creating a duty to investigate beyond the state of record title in virtually all cases. The only possible narrowing factor here was the information provided by the initial listing of the lien on the borrower’s financial statement. The subsequent encumbrancer in
 
 March
 
 (the attorney) was able to ignore similar information without consequence (the ranch owner’s statement that he had borrowed money from the barber, unaccompanied by any statement that he had paid it back). Alliance, however, did not ignore similar information here. Instead, Alliance obtained further clarification from the borrower, and further information from the nonparty bank. Additionally, Alliance consulted a title report. The information ultimately assembled by Alliance from these three sources was both internally consistent and consistent with common secured lending procedures: First Fidelity once had a deed of trust, but it had been reconveyed.
 

 First Fidelity contends that the duty to inquire continued even in the face of the information assembled by Alliance. The inquiry legally required, however, is only a reasonable inquiry, not an exhaustive one. Although this is a matter of degree, the duty to inquire here was discharged once the sole discrepancy had been explained in a manner consistent with normal practice. As the Supreme Court stated in
 
 March,
 
 “[f]urther inquiries . . . were not, under these circumstances, necessary.”
 
 (March
 
 v.
 
 Pantaleo, supra,
 
 4 Cal.2d 242, 244.)
 

 Disposition
 

 The judgment is affirmed. Alliance to recover costs on appeal.
 

 Boren, P. J., and Ito, J.,
 
 *
 
 concurred.
 

 Appellant’s petition for review by the Supreme Court was denied April 15, 1998.
 

 [1]
 

 Appellant’s separate statement claimed to dispute several facts, but examination of the supporting evidence demonstrates no dispute about any fact material to the decision.
 

 [2]
 

 First Fidelity moved to strike the evidence of the phone conversation, contending that this evidence was inconsistent with the testimony of the Alliance loan officer at his deposition and was therefore excludable pursuant to
 
 D’Amico
 
 v.
 
 Board of Medical Examiners
 
 (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10] (declaration on summary judgment which is inconsistent with prior deposition testimony can be disregarded). The deposition excerpts in the record, however, show that the initial discussion between the borrower and the loan officer occurred at a lunch in the marina. At the deposition, the loan officer was asked only about the lunch meeting in the marina. The record does not reflect additional questioning about possible subsequent conversations between the loan officer and the borrower. The record therefore does not demonstrate inconsistency between the loan officer’s deposition testimony regarding the marina lunch meeting and his summary judgment declaration regarding the subsequent telephone conversation. Hence no basis has been demonstrated for an evidentiary exclusion pursuant to
 
 D’Amico.
 
 Nor did First Fidelity present any evidence contradicting the loan officer’s declaration concerning his telephone conversation with the borrower.
 

 [3]
 

 First Fidelity objected that Alliance’s evidence of what it learned from the nonparty bank was hearsay. This particular example would be, if it were offered to prove that First Fidelity’s loan had actually been repaid. That is not the question here, however. To the contrary, it is undisputed that First Fidelity’s loan was not repaid. The question here is the nature of inquiry required of and performed by Alliance, and what Alliance learned in that inquiry. Hence the hearsay objection was not valid. Similar hearsay objections by First Fidelity were similarly invalid.
 

 [4]
 

 Alliance also raised additional claims, discussion of which is not necessary in view of the disposition on appeal.
 

 [5]
 

 Notwithstanding that the attorney was representing the ranch owner in a criminal matter, and presumably had ample occasion to talk with him.
 

 *
 

 Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.