Filed 2/14/25  Krajian v. Razmer #3 CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VAROUJ KRAJIAN, | B331147 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV36174) |
| v. | |
| RAZMER #3, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Affirmed.

Schorr Law, Zachary D. Schorr, Stephanie Goldstein, Carina Woo, and Jayant Tripathy for Plaintiff and Appellant.

Anderson, McPharlin & Conners, Vanessa H. Widener, and Ali Z. Vaqar for Defendant and Respondent.

————————————————

Plaintiff Varouj Krajian appeals from a judgment entered in favor of defendant Razmer #3, LLC (Razmer). We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.    **Facts**

Razmer and Krajian own adjacent commercial properties in in Montebello, California (respectively, the Razmer Property and the Krajian Property). The Razmer Property includes a large parking lot which abuts the south side of a building on the Krajian Property. One roll door on the south side of the Krajian Property is accessible only via the Razmer Property parking lot. The west side of the Krajian Property meets a public street, which provides access to the property via a parking lot, two pedestrian doors, and two roll doors.

The Razmer Property was previously owned by MC Montebello LLC and previously occupied by Georgia Pacific, and the Krajian Property was formerly owned by Tony Ishizaki. In February 2011, MC Montebello granted a written irrevocable license (the License Agreement) permitting Ishizaki to access the south roll door via a 15-foot-wide strip of the Razmer Property parking lot (the License Area). The license was not recorded.

Krajian bought the Krajian Property in 2011. At that time, the License Area was painted with diagonal yellow stripes and white lettering stating "LOADING AREA" and "NO PARKING." The License Area was repainted with those same markings sometime after Krajian purchased the property. The paint markings on the License Area lead from the south roll door to a curb with no permanent driveway.

Razmer acquired the Razmer Property from MC Montebello in early 2018. Real estate firm Lee & Associates represented

2

both sides of the transaction. Jack Cline, Jr. represented Razmer and Peter Bacci represented MC Montebello. Razmer conducted due diligence on the property for several months leading up to the acquisition. The parties communicated and exchanged due diligence documents through their respective real estate agents during this process.

On November 30, 2017, Bacci sent Cline one email attaching several due diligence documents and a second email with a Dropbox link to access additional documents. Cline forwarded the emails to Brian Dror, Razmer's manager, and Avi Ryzman, its authorized representative. The License Agreement was not attached to either email or included in the Dropbox link.

On December 1, 2017, Cline sent Dror and Ryzman a link to a Lee & Associates SharePoint folder containing due diligence documents for the transaction.[1] The SharePoint folder did not include the License Agreement.

Razmer received a preliminary title report dated December 14, 2017. That report listed several easements on the Razmer Property, but it did not list the License Agreement.

On December 20, 2017, Bacci sent Razmer a Property Information Sheet describing MC Montebello's knowledge of certain information about the Razmer Property. The Property Information Sheet asserted that MC Montebello had no knowledge of any unrecorded licenses, easements, or other encumbrances affecting the title of the Razmer Property.

---

[1]     It is unclear from the record whether the SharePoint materials were duplicative of the documents sent on November 30, overlapping, or entirely new.

During the due diligence process, Razmer also learned that Georgia Pacific had stored hazardous materials in above-ground storage tanks somewhere on the Razmer Property. Ryzman believed the yellow striping and white lettering in the parking lot were consistent with Georgia Pacific's past use of the property.

Meanwhile, on September 27, 2017, MC Montebello's law firm, Procopio, Cory, Hargreaves, & Savitch, LLC (Procopio), uploaded the License Agreement into a ShareFile folder containing documents relevant to the Razmer Property.

On December 1, 2017, Procopio emailed a link to the ShareFile directly to Dror, Razmer's manager. Dror declared that he did not receive the email and that his "practice would have been to access and download the documents." Documents from the Procopio ShareFile folder were accessed by several individuals before the deal closed, but the appellate record does not indicate that Dror ever viewed or downloaded any of the files.

Bacci, MC Montebello's real estate agent, first learned of the License Agreement in or around December 2017, when he received a copy from Procopio. Bacci was not previously aware of any "easement or ingress or egress" on the Razmer Property. According to Bacci, the License Agreement was not disclosed to him earlier by Procopio or MC Montebello because, based on his experience visiting the Razmer Property "on numerous occasions," the License Area "was never used." After he received the agreement, Bacci did not send the agreement to Razmer. Bacci testified that he spoke to "the agents" and Ryzman about the license sometime around the closing while they were "at the property." He later testified that he could not remember if he ever discussed the license with Ryzman or Cline, and that he never discussed the license with any of Razmer's agents.

4

On January 10, 2018, escrow closed on Razmer's acquisition of the Razmer Property.

On January 18, 2018, Ryzman emailed Cline about an electrical box situated on the north side of the Krajian Property because he "wondered how it was accessed." Ryzman stated that he "looked over both the survey and title. There is NO easement on title for the benefit of the owner to the north." Cline responded that Bacci "thought it would be a good idea and meet at the site to go over all issues. He knows the site very well and should be able to shed light." Bacci and Ryzman met at the Razmer Property on January 30. Bacci "indicated there may be an 'easement' from the utility company for the [Krajian Property]; and that the seller let the [Krajian Property tenant] use the [Razmer Property] to check his building's meter on occasion. [Bacci] did not mention the License Agreement. Since the Survey and Title Report did not disclose an easement for the [Krajian Property], [Ryzman] concluded no further investigation into the prior neighborly accommodation was needed."

## II.    Procedure

In September 2021, Krajian filed a complaint against Razmer seeking to enforce an irrevocable license and bringing claims for an implied easement, nuisance, injunctive relief, and declaratory relief.[2] The complaint attached the License Agreement and alleged that MC Montebello disclosed that document to Razmer. The complaint alleged that Krajian painted the License Area "with *bright and florescent traffic pavement striping*, including signage stating, 'LOADING AREA' and 'NO PARKING.'" It further alleged that Krajian and the

---

[2]    Krajian also named 1602 Cats #7, LLC as a defendant, but later amended his complaint and omitted reference to that entity.

5

occupants of the Krajian Property used the License Area to access the south roll door, and that Razmer observed this use for at least three years. The complaint therefore alleged that Razmer had actual and constructive notice of an irrevocable license.

The complaint further alleged that the two properties shared a common owner, and that the predecessor owners intended for the owner of the Krajian Property to use the License Area for the benefit of that property.

According to the complaint, after Razmer purchased the Razmer Property, it interfered with the irrevocable license by "attaching metal fencing with chains and padlocks" to stop Krajian and his tenants from accessing the License Area.

In February 2023, Razmer moved for summary judgment. Razmer argued that it was entitled to summary adjudication on Krajian's irrevocable license claim because Razmer was a bona fide purchaser and had no actual or constructive notice of the License Agreement, citing *Gamerberg v. 3000 E. 11th St., LLC* (2020) 44 Cal.App.5th 424, 432 (*Gamerberg*). It submitted evidence that Razmer did not receive the License Agreement during its due diligence process for the Razmer Property, that MC Montebello asserted it was unaware of any unrecorded licenses, and that the paint markings in the parking lot were consistent with Georgia Pacific's prior use. Regarding Krajian's implied easement claim, Razmer contended there was no evidence of any common owner and cited Krajian's deficient discovery responses on that issue, and argued that the alleged easement was not reasonably necessary for Krajian's use of the Krajian Property. Razmer further argued that Krajian's claims for nuisance and declaratory relief failed because they were dependent on his claim to enforce the License Agreement. It

6

contended Krajian's claim for injunctive relief and damages failed because those are remedies, not causes of action.

Krajian's opposition argued that there was a triable issue of material fact as to whether Razmer had actual and constructive notice of the License Agreement. As for actual notice, Krajian cited the due diligence disclosures described above and argued there was a fact dispute as to whether Razmer received the license. Regarding inquiry notice, Krajian argued that the striping and lettering in the License Area were "clearly visible and sufficient enough to provide notice." Krajian further argued that the License Agreement should be enforced as a matter of equity because Krajian and his tenants had invested $3 million in the property in reliance on the license.

Regarding his implied easement claim, Krajian argued there was a fact dispute as to whether the properties shared a common owner, citing deeds and deposition excerpts reflecting that the properties were previously owned by different entities whose names included the word "Montebello."[3] Krajian also asserted that the implied easement was reasonably necessary for his use of the property because the south roll door can only be accessed through the License Area. Finally, Krajian argued that the evidence supports his nuisance claim, and that injunctive relief was appropriate to allow his use of the License Area.

---

[3] In support, Krajian also cited portions of two declarations, a Statement of Information and a Grant Deed for HM Montebello LLC, and the Articles of Organization for MC Montebello. The trial court sustained Razmer's objections to the declarations and denied Krajian's request for judicial notice of the two corporate filings. Krajian does not challenge these rulings on appeal.

Krajian also asked the court to take judicial notice of an aerial photograph of the properties, correspondence with the City of Montebello relating to the Krajian Property, corporate materials for two predecessor owners of the properties, and Ryzman's LinkedIn profile.

Razmer's reply reiterated its arguments that there were no disputed facts as to any implied easement or notice of the License Agreement. It further argued that any claim to enforce the license based on equity was not supported by the facts. Razmer also submitted evidentiary objections to several assertions in Krajian's declarations and to Krajian's request for judicial notice.

The trial court issued a tentative ruling granting summary judgment, but no written tentative is included in the record on appeal. At the hearing on Razmer's motion, Krajian argued that the paint markings in the parking lot were sufficient to establish a triable issue of material fact as to constructive notice, and that there was a fact dispute as to actual notice based on the due diligence disclosure records and Bacci's testimony that he talked to Ryzman about the license. Razmer argued that Bacci's testimony was equivocal, and that there was no evidence that Razmer received or learned about the License Agreement. Razmer also argued that it understood the paint markings to be a remnant of a prior tenant's use, not an easement. It further argued that the due diligence materials—in particular, the representation in the Property Information Sheet that there were no unrecorded licenses—established that there was no triable issue of fact as to constructive notice. The trial court took the motion under submission.

The trial court granted summary judgment. Preliminarily, it denied Krajian's request for judicial notice and sustained most

of Razmer's evidentiary objections.[4]  The court determined there was no triable issue of material fact as to Razmer's lack of actual notice of the License Agreement.  It acknowledged that Procopio sent a ShareFile link to Dror, but found no evidence that Dror accessed the link or the files therein.  The court recognized that Bacci testified that he talked to "the agents" and Ryzman about the license at some point.  However, Bacci also testified that he did not remember whether he talked about the license with Ryzman or Cline.  The court concluded that Bacci's testimony was equivocal, and that it appeared consistent with evidence that Bacci and Ryzman met at the property after the closing to discuss a utility easement.

The court recognized that Razmer obtained extensive due diligence materials from MC Montebello, but never received a copy of the License Agreement.  In particular, the court noted that MC Montebello affirmatively represented that the Razmer Property was not subject to any unrecorded license or other encumbrance.  The court concluded that even if the paint markings in the parking lot were enough to require inquiry, Razmer conducted a reasonable inquiry, and it received materials indicating that no license existed.  Because Razmer lacked notice, the court also rejected Krajian's argument that the License Agreement should be enforced for equitable reasons.

Next, the court determined there was no material fact dispute as to an implied easement.  Such an easement requires that the properties once shared a common owner.  (*Romero v. Shih* (2024) 15 Cal.5th 680, 698 (*Romero*).)  The trial court rejected Krajian's request for judicial notice of two documents

---

[4]     Krajian does not challenge the trial court's evidentiary rulings on appeal.

allegedly supporting that the properties had a common owner in the past. In any case, the court reasoned that those documents only reflected that the properties were once owned by entities with similar names, and that those entities were managed by individuals with the last name Marshall. Krajian cited Bacci's testimony that the Marshalls once owned the Krajian Property, but his testimony made no reference to the Razmer Property or any shared ownership. The court also recognized that Krajian did not submit a declaration asserting that additional facts on this issue may exist. (Code Civ. Proc., § 437c, subd. (h).)[5] Thus, the trial court determined Krajian failed to establish a triable issue of fact as to common ownership.

Finally, the court determined that Krajian's claims for nuisance, injunctive relief, and declaratory judgment were dependent on the success of one or both of his first two causes of action, and therefore granted summary adjudication as to those claims.

The court entered summary judgment for Razmer. Krajian timely appealed.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) A defendant moving for summary judgment has the initial burden of showing a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or

---

[5] All undesignated statutory references are to the Code of Civil Procedure.

there is a complete defense. (§ 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact based on specific facts. (§ 437c, subd. (p)(2); *Aguilar*, at p. 849.)

" ' " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' [Citation.]" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

## II. Krajian Has Not Established a Triable Issue of Material Fact as to His Claim to Enforce an Irrevocable License

### A. *Applicable Law*

"When a landowner allows someone else to use her land, the owner is granting a license." (*Shoen v. Zacarias* (2019) 33 Cal.App.5th 1112, 1119.) Generally, the licensor can revoke a license at any time and for any reason, and the license is revoked upon any conveyance of the burdened property. (*Richardson v. Franc* (2015) 233 Cal.App.4th 744, 751 (*Richardson*).) However, when a licensee "has expended time and a substantial amount of money on improvements with the licensor's knowledge," the license becomes irrevocable, "the licensor is said to be estopped from revoking the license, and the license becomes the equivalent of an easement, commensurate in its extent and duration with the right to be enjoyed." (*Ibid.*) Even so, an irrevocable license is

11

not binding on a subsequent bona fide purchaser of the encumbered property who lacks notice of the license. (*Gamerberg*, *supra*, 44 Cal.App.5th at p. 432.)

Actual notice "consists in express information of a fact." (Civ. Code, § 18.)  Constructive notice is that "which is imputed by law." (*Ibid*.)  In addition, "[e]very person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact." (*Id*., § 19; *First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1443 (*First Fidelity*) ["A person generally has 'notice' of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact"].)

### B.     *Gamerberg and Noronha*

In the trial court, Krajian argued that *Gamerberg* is "applicable and informative" and "controlling."  He now claims that *Gamerberg* was wrongly decided and asks this court to instead follow *Noronha v. Stewart* (1988) 199 Cal.App.3d 485 (*Noronha*), in which the court concluded that an irrevocable license is binding on successors to the licensor regardless of the successors' knowledge of the license.  (*Id*. at p. 491.)  Although Krajian failed to cite *Noronha* below, the forfeiture doctrine is "relaxed" where, as here, the "new theory pertains only to questions of law on undisputed facts." (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1326.)  We therefore exercise our discretion to consider, and reject, Krajian's contention.[6]

---

[6]     Krajian similarly argues, for the first time on appeal, that it would be inequitable to not enforce the unrecorded License

12

In *Noronha*, the defendants purchased a lot in a subdivision. The apparent owner[7] of the neighboring lot agreed that the defendants could build a fence encroaching on his lot. (*Noronha, supra*, 199 Cal.App.3d at pp. 487–488.) The plaintiffs later purchased the lot and demanded that the defendants tear down the fence. (*Id.* at p. 488.) The appellate court concluded the license was binding on the plaintiffs because the seller had informed them that the fence encroached on the lot. (*Id.* at p. 491.) Alternatively, the court stated: "Nor is plaintiffs' knowledge required for the license to become irrevocable. Once defendants have expended substantial effort in execution of the license, 'the license will continue for so long a time as the nature of it calls for.' " (*Ibid.*, quoting *Cooke v. Ramponi* (1952) 38 Cal.2d 282, 286 (*Cooke*); see also *Stoner v. Zucker* (1906) 148 Cal. 516 (*Stoner*) [same].)

We decline to follow *Noronha* in concluding that an irrevocable license is binding on a successor who lacks knowledge thereof. *Noronha* did not involve a successor who lacked notice, and the case law on which it relied for this proposition also did

---

Agreement against Razmer because a license does not affect title and thus cannot be recorded, citing *Green Tree Headlands LLC v. Crawford* (2023) 97 Cal.App.5th 1242. *Green Tree* does not aid Krajian's cause, however, as it reiterates that a license is typically not binding on a successor. (*Id.* at p. 1259 ["A license is a personal right granted to the licensee" and "is generally not a servitude that runs with the land"].)

[7] The apparent owner did not yet own the property, but purchased it soon thereafter. The appellate court determined that a grantor of a license who later acquires title is bound to honor the license under the after-acquired title doctrine. (*Noronha, supra*, 199 Cal.App.3d at pp. 489–490.)

13

not involve a successor without notice.  "It is well settled that language contained in a judicial opinion is ' "to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]" ' " (*People v. Banks* (1993) 6 Cal.4th 926, 945.)  In *Cooke*, an irrevocable license was established after the defendants permitted the plaintiffs to "do what they wished about the maintenance of the road [that crossed defendants' property] so long as they did not bother defendants in that regard." (*Cooke*, *supra*, 38 Cal.2d at p. 285.)  And in *Stoner*, the court rejected the plaintiff's attempt to revoke a license he had personally granted to the defendants. (*Stoner*, *supra*, 148 Cal. at p. 517.)  Neither *Cooke* nor *Stoner* considered or determined whether an irrevocable license would be binding on a subsequent purchaser without notice.  *Noronha* therefore either misunderstood or mischaracterized these cases in describing the law.

After distinguishing *Noronha* on this basis, the *Gamerberg* court reasoned that *Churchill v. Russell* (1905) 148 Cal. 1 (*Churchill*) better reflects the applicable law on this point. (*Gamerberg*, *supra*, 44 Cal.App.5th at p. 431.)  In *Churchill*, a property owner executed a parol agreement allowing the defendants to construct a ditch and draw water from a creek on his property. (*Churchill*, at pp. 2–4.)  The property owner later died and the plaintiff, who later purchased the property, sued to restrain the neighbor from continuing to use the water. (*Id.* at p. 4.)  Our high court reasoned that the subsequent purchaser took the property "free from any equitable claim of defendants, unless plaintiff purchased it with actual or constructive notice of their equitable rights," and described this rule as "so familiar that no

14

citation of authorities is necessary to support it."[8]  (*Id*. at p. 6; *Blankenship v. Whaley* (1899) 124 Cal. 300, 302 [parol agreement permitting plaintiff to use ditch and water on neighbor's land was not binding on subsequent purchaser of said land unless the purchaser had notice; remanded for further findings as to notice].)  Applying this rule, *Gamerberg* concluded that an irrevocable license is binding on a subsequent purchaser only if that purchaser had notice of the license.  (*Gamerberg*, at p. 432.)[9]

Krajian argues *Gamerberg* erred in relying on *Churchill* because the latter case "did not involve a license to use land, but a claim to ownership of water rights."  Indeed, *Churchill* addressed a conveyance of equitable title to water rights, which constitutes "an estate in real property . . . ."  (*Churchill*, *supra*, 148 Cal. at p. 4.)  A license, in contrast, "does not create or convey

---

[8]    Because the record did not reflect a finding that the plaintiff had knowledge of the agreement, the court reversed and remanded for a new trial.  (*Churchill*, *supra*, 148 Cal. at p. 7.)

[9]    The *Gamerberg* court also cited commentators and case law from other jurisdictions for its conclusion that an irrevocable license is binding on a subsequent purchaser only when he or she has notice.  (*Gamerberg*, *supra*, 44 Cal.App.5th at p. 432 [collecting treatises and out-of-state cases].)  In addition, the court explained that California courts recognize an irrevocable license as " 'for all intents and purposes the equivalent of an easement.' "  (*Id*. at p. 434, quoting *Barnes v. Hussa* (2006) 136 Cal.App.4th 1358, 1370 (*Barnes*).)  An easement is enforceable against a subsequent purchaser only if that purchaser has actual or constructive notice thereof, further supporting that an irrevocable license is subject to that same requirement.  (*Gamerberg*, at p. 434, citing *Mesmer v. Uharriet* (1916) 174 Cal. 110, 116; *Pollard v. Rebman* (1912) 162 Cal. 633, 634.)

15

any interest in the real property; it merely makes lawful an act that otherwise would constitute a trespass." (*Richardson*, *supra*, 233 Cal.App.4th at pp. 758–759.) Even so, courts of appeal in this state have consistently described *Churchill* as applicable in the context of an irrevocable license. (*Gamerberg*, *supra*, 44 Cal.App.5th at p. 431 [applying *Churchill* in the context of an irrevocable license]; *Irrigated Valleys Land Co. v. Altman* (1922) 57 Cal.App. 413, 426 [same]; *Stepp v. Williams* (1921) 52 Cal.App. 237, 253 [same]; *Batta v. Hunt* (2024) 106 Cal.App.5th 295, 305 [citing *Churchill* in addressing an easement, which is functionally the same as an irrevocable license, see *Barnes*, *supra*, 136 Cal.App.4th at p. 1370].) Other cases involving subsequent purchasers of land encumbered by a license similarly focus on the successor's notice thereof, further suggesting the rule described in *Churchill* is applicable in this context. (*Richardson*, at p. 755 [irrevocable license to use a driveway was binding on licensor's successors who had "full knowledge" of licensee's use]; *Clendenin v. White* (1923) 62 Cal.App. 664, 667 [irrevocable license for a drainage ditch was binding on licensor's successor who "had knowledge of the agreement"].)

We agree with the *Gamerberg* court that a license is binding only on a successor with notice thereof, and we respectfully decline to follow *Noronha* on this point. Thus, Krajian's claim to enforce an irrevocable license against Razmer may survive summary adjudication if the evidence reflects a triable issue of material fact regarding Razmer's lack of notice of the license.

16

### C.  *Krajian Has Not Established a Dispute of Material Fact as to Razmer's Lack of Actual or Constructive Notice of The License Agreement*

In his first cause of action, Krajian asked the court to enforce the License Agreement against Razmer.

Razmer sought summary judgment on the ground that it was a bona fide purchaser[10] who did not have actual or constructive notice of the License Agreement.  (*Gamerberg*, *supra*, 44 Cal.App.5th at p. 432.)  Dror, Razmer's manager, and Ryzmer, its designated representative, both declared that they received three sets of due diligence materials from MC Montebello, but they did not ever receive the License Agreement.  In the Property Information Sheet, MC Montebello asserted that it had no knowledge of any unrecorded licenses, and a preliminary title report disclosed several easements but not the License Agreement.  Razmer also submitted evidence that Ryzman understood the yellow paint and white lettering in the License Area was consistent with Georgia Pacific's historical use of the Razmer Property.  (*First Fidelity*, *supra*, 60 Cal.App.4th at p. 1445 [duty to inquire may be discharged when discrepancies are "explained in a manner consistent with normal practice"].)  This was sufficient to shift the burden to Krajian to identify " 'specific facts showing that a triable issue of material fact

---

10    A bona fide purchaser is one who "(1) purchase[d] the property in good faith for value, and (2) ha[d] no knowledge or notice—actual or constructive—of the asserted rights of another." (*RNT Holdings, LLC v. United General Title Ins. Co.* (2014) 230 Cal.App.4th 1289, 1296.)  Krajian does not dispute that Razmer purchased the Razmer Property in good faith for value.

17

exists' " as to whether Razmer had actual or constructive notice of the license.  (*Aguilar*, *supra*, 25 Cal.4th at p. 849.)

Krajian argues that there is a triable issue of material fact as to actual notice because Procopio sent Dror a ShareFile link that included the License Agreement.  However, Dror declared that he did not receive the email.  And while Krajian submitted a document reflecting that several individuals viewed and downloaded files from that folder, the document does not indicate that Dror accessed the License Agreement or any other file.  Krajian also contends that Razmer had actual notice because Tony Naples, a Senior Vice President at Lee & Associates, downloaded materials from the Procopio ShareFile before the transaction closed.  But Razmer was represented by Cline; the record does not reflect Naples's relationship, if any, with Razmer.

Krajian also claims that Razmer had actual notice based on the testimony of Bacci (MC Montebello's real estate agent) that he discussed the License Agreement with Cline (Razmer's agent).  However, while Bacci testified that he spoke to "the agent" about the License Agreement, he did not clarify who he was referring to.  Moreover, Bacci later testified that he did not talk about the License Agreement with Cline or any of Razmer's "agents" before Krajian's lawsuit was filed.  This "vague and equivocal testimony" is insufficient to create a fact dispute.  (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1092 (*Whitmire*); *McGonnell v. Kaiser Gypsum Co., Inc.* (2002) 98 Cal.App.4th 1098, 1105 ["It is not enough to produce just some evidence.  The evidence must be of sufficient quality to allow the

18

trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment"].)[11]

Krajian argues that Razmer's knowledge of the yellow striping and white lettering on the License Area established a material fact dispute as to its constructive notice of the License Agreement. (Civ. Code, § 19 ["Every person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact."].) Yet, the inquiry required "is only a reasonable inquiry, not an exhaustive one." (*First Fidelity*, *supra*, 60 Cal.App.4th at p. 1445.) Even assuming Razmer's knowledge of the painted area required it to inquire further, the undisputed facts reflect that its inquiry was reasonable. Razmer obtained extensive due diligence in connection with its purchase of the Razmer Property, but never received the License Agreement. The Property Information Sheet expressly asserted there were no unrecorded licenses or other encumbrances on the property, and the preliminary title report listed several easements but no license. Moreover, Razmer learned that hazardous materials were once stored in or near the License Area, suggesting the paint markings were consistent with that prior use. Thus, even if the paint markings initially seemed

___

[11] Bacci also testified that he talked about the License Agreement with Ryzman sometime around the closing. Krajian's arguments on appeal do not rely on this testimony. In any case, Bacci could not remember exactly when he talked to Ryzman, and he later testified that he did not recall if he ever discussed the License Agreement with Ryzman. This "vague and equivocal testimony" is also insufficient to create a fact dispute. (*Whitmire*, *supra*, 184 Cal.App.4th at p. 1092.)

19

unusual, Razmer's "duty to inquire here was discharged once the sole discrepancy had been explained" by the due diligence materials. (*Ibid.*)

Krajian has not identified any triable issue of material fact regarding Razmer's lack of actual or constructive notice.[12]

## III. Krajian Has Not Established a Triable Issue of Material Fact as to His Claim to Enforce an Implied Easement

"To establish the existence of an implied easement, a plaintiff must allege and prove a specific set of circumstances surrounding a particular land transaction: that a common owner of property conveyed a portion of that property to another, that

---

[12] Krajian also asked the trial court to enforce the License Agreement as a matter of equity. The court rejected this contention and Krajian did not raise it in his appellate briefing. The argument is therefore abandoned. (*Case v. State Farm Mutual Automobile Ins. Co., Inc.* (2018) 30 Cal.App.5th 397, 402 ["our review is limited to contentions adequately raised in [appellant's] briefs"].)

Relatedly, we reject as forfeited Krajian's argument, raised for the first time on appeal, that he established a new irrevocable license after he purchased the Krajian Property. Krajian did not raise any such theory in his complaint, meaning Razmer had no obligation or opportunity to rebut it. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 [at summary judgment, "a moving party need not refute liability on some theoretical possibility not included in the pleadings"].) And since the theory was not litigated below, its resolution would almost certainly be affected by additional evidence. (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 509–510 [declining to consider for first time on appeal allegations that raise new "issues of fact that could be altered by the presentation of additional evidence"].)

the parties to the transaction must have intended to maintain the benefits and burdens between the newly divided estates after the separation of title, and that the resulting easement was reasonably necessary to the dominant estate." (*Romero*, *supra*, 15 Cal.5th at p. 698.)

Razmer's summary judgment motion argued that Krajian could not establish that the two properties shared a common owner at any time in the past. In support, Razmer cited recent deeds to the two properties, which reflected that they had been owned by different entities since at least 2006. Razmer also cited Krajian's response to a special interrogatory in which Krajian asserted, "[o]n information and belief," that the two properties were once owned by the same entity. This evidence was sufficient to shift the burden to Krajian to establish a triable issue of material fact. (*Aguilar*, *supra*, 25 Cal.4th at p. 849; *Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1102–1103 ["a defendant may show the plaintiff does not possess evidence to support an element of the cause of action by means of presenting the plaintiff's factually devoid discovery responses from which an absence of evidence may be reasonably inferred"].)

Krajian argues the two properties shared a common owner, citing evidence that the Krajian Property was owned by HM Montebello LLC until 2006 and that MC Montebello owned the Razmer Property from 2000 until 2011. Yet, Krajian has presented no evidence or reasoned argument supporting that these two LLCs are related, let alone had a single common owner.[13] "It is not our place to construct theories or arguments to

---

[13] Krajian contends "members of the Marshall family" controlled both properties "since at least the 1980s." However, the only evidence cited in support of this claim is Krajian's own

21

undermine the judgment and defeat the presumption of correctness." (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 (*Delta Stewardship*).)

Krajian claims he will be able to "obtain evidence" to support this element of his implied easement claim. However, if Krajian believed "facts essential to justify opposition [to Razmer's summary judgment motion] may exist" but were not readily available, he could and should have requested a continuance of the summary judgment hearing in order to obtain such facts. (§ 437c, subd. (h).) He failed to do so. On the existing record, Krajian failed to establish a triable issue of material fact as to common ownership.

## IV. Krajian's Argument Regarding His Remaining Causes of Action Fails

Krajian argues that his causes of action for nuisance, injunctive relief, and declaratory relief are "wholly distinct issues" that must be analyzed separately from his other claims. Krajian forfeited this contention by failing to support it "with reasoned argument and citations to authority." (*Delta Stewardship, supra*, 48 Cal.App.5th at p. 1075.) Indeed, the complaint alleged that each remaining cause of action is dependent on the enforceability of the irrevocable license against Razmer. Because Krajian failed to establish a triable issue of material fact on that claim, summary adjudication was appropriate on these dependent claims.

---

declaration that this was his "understanding." The trial court sustained Razmer's objection to that assertion for lack of foundation, and Krajian does not contest that ruling on appeal.

**DISPOSITION**

The order granting summary judgment for Razmer is affirmed.  Respondent is awarded its appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


HANASONO, J.*


We concur:


EGERTON, Acting P. J.


ADAMS, J.

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.